111 So.2d 530 (1959)
Eddie LATHERS, Plaintiff-Appellant,
v.
SCHUYLKILL PRODUCTS CO., Inc., Defendant-Appellee.
No. 4788.
Court of Appeal of Louisiana, First Circuit.
April 27, 1959.
H. Alva Brumfield, Robert Turner, Baton Rouge, for appellant.
Taylor, Porter, Brooks, Fuller & Phillips, Tom F. Phillips, Baton Rouge, for appellee.
Before ELLIS, FRUGE and LANDRY, JJ.
ELLIS, Judge.
This is a workmen's compensation proceeding wherein the plaintiff seeks compensation for alleged permanent and total disability arising out of his having contracted lead poisoning. The lower court rendered judgment in favor of the defendant and the claimant has appealed.
The plaintiff bases his suit upon two grounds, namely:
I. That the episode of acute lead poisoning suffered by the plaintiff has made him more susceptible to lead poisoning and therefore it is unsafe for him to work around lead or around any product containing lead, and for this reason he is permanently and totally disabled within the meaning of the Workmen's Compensation Statute, and,
II. That the plaintiff is suffering from a nervous disorder as a result of the lead poisoning which renders him totally and permanently disabled.
There is no dispute as to the plaintiff having suffered an acute lead poisoning and consequently his injuries are covered by LSA-Revised Statute 23:1031.1, which provides compensation for poisoning resulting from lead. The question presented is whether he has recovered from this disease and whether, if he is susceptible to such poisoning, he is totally and permanently disabled within the purview of the Workmen's Compensation Act.
*531 In determining whether this plaintiff has been totally disabled from an industrial accident it is necessary to determine whether he was a skilled or common laborer. If a common laborer is injured and is thereby prevented from engaging in one or two, or even a few particular kinds of common labor, but is able to do other kinds of common labor, he is not totally disabled.
The plaintiff, before being employed by the defendant, worked for a long time as a porter and general handy-man at a department store. He then went to work for the defendant as a common laborer and was paid the lowest scale prevailing at the defendant's plant. Shortly before the incident of the lead exposure it was proven he was classified as a common laborer. The lead poisoning was suffered in the lead kettle room where the plaintiff worked as a "lead skimmer". The plaintiff contends this work was skilled in nature. However, although admitting the plaintiff did some lead skimming, it was shown he was a helper only and followed behind a skilled man rather than doing any skilled work himself. There is nothing in the record to show his duties were skilled and his wage increase of 8 cents per hour above his former wage scale of $1 per hour is not indicative of the fact that he had become a skilled laborer, for it was proven to have been given him due to seniority. After the plaintiff had contracted lead poisoning and recovered and his employment by the defendant terminated he worked for a printing company for about two and one-half months and for Louisiana State University as a common laborer for approximately six months. On another occasion he did yard work for a resident of Zachary, La. The plaintiff himself testified that he was able and willing to perform common labor but at the time of the trial he had been unable to obtain a job. This record proves the plaintiff to be a common laborer and not a skilled worker. Thus, if the injury he suffered precludes him from working around lead but does not substantially decrease his ability to compete in the general labor market he is not totally disabled.
In Jackson v. Steel Fabricators, La.App., 90 So.2d 397, 400 an employee was found to be no longer disabled from performing common labor work similar to that in which he had been previously engaged even though he had sustained 10 per cent permanent impairment of the use of an ankle. Both rehearing and Writ of Certiorari were denied. The Court, in reaching this conclusion, said:
"On the other hand, we have felt, and still feel, that if a common laborer sustains injury which may prevent him from engaging in one or two or even a few particular kinds of common labor but that he is nevertheless able to do many other kinds of common labor, he is not totally disabled and is entitled to compensation for partial disability in some cases where his ability to earn has been reduced, or to compensation based on the impairment of the member where that impairment has not resulted in the reduction of his ability to earn."
Having concluded the plaintiff here was a common laborer even though it be admitted he could not work around lead, he can still perform manual labor and cannot be said to be unable to compete in the general labor market.
Counsel for the appellant contends the medical testimony here supports a finding of permanent and total disability under the criterion of Johnson v. Travelers Insurance Co., La.App., 99 So.2d 372. We cannot agree. In the Johnson case the employee was a painter by trade, the only work which he knew and for which he was trained, and the issue before us there was whether or not he would be able to return to his former trade of painting. The evidence was inconclusive as to whether he was more susceptible to a recurrence of lead poisoning and we remanded that cause for further testimony upon that point. There is no showing in this record the *532 plaintiff had any previous experience or training in working around substances containing lead and he was certainly not a skilled worker. The Johnson case is inapposite.
For the reasons above expressed and authorities cited we do not feel the first position taken by the plaintiff has any merit.
The second ground advanced by the plaintiff warranting recovery is that the plaintiff, due to the residual effects of the lead poisoning, has become so nervous as to be totally disabled.
There was some evidence of the plaintiff having had syphillis but the evidence indicates that this disease has nothing to do with plaintiff's alleged disability and the only question to be decided is whether or not the plaintiff is able to carry on his usual unskilled work of a common laborer. The plaintiff's work record has already been reviewed and the medical evidence preponderates as to plaintiff's ability to perform manual labor. Dr. Lorio testified that when he discharged the plaintiff on September 28, 1956 he had completely recovered from the lead poisoning and that in his opinion the claimant was able to perform manual labor. On October 4, 1956 this same Doctor performed a pre-employment physical examination and recommended again the plaintiff was capable of performing full manual labor. Dr. Edelman, a witness on behalf of the plaintiff, performed a complete neurological examination and testified no neurological abnormality was demonstrated. This physician also made two electroencephalograms and he testified neither were even clinicly suggestive of any brain damage or disorder of the central nervous system. Dr. Freedman, another witness for the plaintiff, a neurosurgeon and psychiatrist, performed detailed neurological examinations and stated they were negative for any findings of nerve damage. Dr. Williams testified for the plaintiff and stated he was unable to find any objective symptoms of nerve injury. One psychiatrist, Dr. Wyatt, stated he detected some organic brain damage by observing the plaintiff, listening to him talk about his sex habits and observed other objective complaints. The preponderance of the medical testimony shows the plaintiff is able to perform manual labor. The evidence as a whole seems to indicate his nervous temperament is no worse since the instance of the lead poisoning than it was prior thereto. According to the brief filed by the appellee the trial court found this to be a fact and pointed out in its oral reasons for judgment that there was little change if any in the claimant's personality before and after the lead poisoning.
The testimony, taken as a whole, shows the plaintiff has recovered from lead poisoning, is and was a manual laborer, has worked at manual labor since the instance of lead poisoning and, by his own testimony, is able to perform manual labor.
For the above and foregoing reasons the judgment of the district court is affirmed.
Affirmed.