131 So.2d 50

Armand George OLIVIER, Jr.

v.

LIBERTY MUTUAL INSURANCE COMPANY and Charles X. Miller.

No. 45497.

May 29, 1961.

Rehearing Denied June 29, 1961.

Elmer D. Flanders, Dudley D. Flanders, New Orleans, for plaintiff-appellant.

John V. Baus, of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendants-appellees-respondents.

HAWTHORNE, Justice.

Armand George Olivier, Jr., instituted this suit against his former employer, Charles X. Miller, and Miller's compensation insurer, Liberty Mutual Insurance Company, alleging himself to be totally and permanently disabled and seeking workmen's compensation. The district court dismissed his suit, the Court of Appeal affirmed, and we granted certiorari. 125 So.2d 179.

It is plaintiff's contention that while he was in the employ of the defendant Miller, he contracted dermatitis, an occupational disease, and as a consequence is entitled to compensation for total and permanent disability under R.S. 23:1031.1. That statute reads:

"A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, * * shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.

"B. An occupational disease shall include only those diseases hereinafter listed when contracted by an employee in the course of his employment as a result of the nature of the work performed. * * *

* * * * * *

"(5) Dermatosis * * *"

There is no serious dispute as to the facts in this case, which may be briefly summarized as follows:

In January, 1957, plaintiff, then 20 years of age, was employed by the defendant Charles X. Miller as a plasterer's apprentice, working 40 hours a week at $1.84 per hour. He accepted this employment in order to learn the plastering trade, and under union rules he was required to serve as an apprentice for four years before he became a journeyman or qualified plasterer. His work necessitated his coming into physi-

cal contact with cement, plaster, and acoustical material. In November, 1958, while so employed, plaintiff developed a rash or irritation of the skin of the back of his hands and fingers. Sometime in February, 1959, the defendant Miller sent plaintiff to a specialist in dermatology, who performed a patch test and obtained a positive reaction to potassium dichromate, a chemical contained in cement. The doctor's diagnosis was contact dermatitis due to cement. Plaintiff continued to work as a plasterer's apprentice for defendant until February 18, 1959, at which time he quit in order to avoid further contact with cement, upon the doctor's recommendation that he stop working in the plastering trade and seek other employment. He was paid his full wages from November, 1958, when he contracted dermatitis, until he terminated his employment the following February. Within a week he obtained a job at an apartment doing maintenance work, for which he was paid $1.25 an hour for 40 hours a week. He worked continuously at this job until the time of trial except for a couple of days in the first part of July, 1959, when he again attempted to do plastering but was forced to discontinue that work because of the reappearance of the dermatitis.

The only dermatologist who testified in the case tells us that dermatitis is an inflammation of the skin; that dermatosis is any disease of the skin, and that the term "dermatosis" necessarily includes the term "dermatitis". He testified that the dermatitis which Olivier had is in the category of an allergy; that such a condition is not called an allergy until it develops; that Olivier had a predisposition to develop this particular allergy, which probably existed before he came in contact with the cement; that it is not known whether such a condition is congenital or not. He testified that in his opinion the dermatitis would flare up again if the plaintiff went back to working with cement; that he usually told people susceptible to this type of disease not to return to the same kind of work, and that usually the attacks they got on subsequent exposure were more severe than the earlier ones.

The plaintiff and the doctor seem to agree that the plaintiff is not disabled except for his inability to perform work which requires contact with the chemical to which he is allergic and which is found in cement. Plaintiff testified:

"Q. You can do anything in your work, except get around any substance that will cause the rash to come back?

"A. Yes."

The doctor testified:

"Q. The condition which he has now without further contact with the offending substance—the condition in itself is not painfully disabling, is it?

"A. I would not think, certainly not painful. I wouldn't think it was disabling."

Under R.S. 23:1031.1 every employee who is disabled because of the contraction of one of the occupational diseases listed in that section is entitled to compensation during the period of disability; and the fact that there existed a predisposition to develop one of those diseases is no defense because the employer must accept the workman as he finds him. In the instant case, however, plaintiff does not seek compensation for the period during which he was disabled by the attack of dermatitis; he contends that he is entitled to compensation for total and permanent disability because if he returns to his job as a plasterer, he would necessarily come into contact with cement, which would bring about a recurrence of dermatitis. In other words, he contends that due to his susceptibility to dermatitis he is no longer able to work as a plasterer and consequently is totally and permanently disabled.

The occupational disease amendment to the compensation act (R.S. 23:1031.1) providing for compensation for an employee who is disabled because of the contraction of an occupational disease named therein provides that such an employee shall be entitled to compensation "the same as if said employee received personal injury by accident * * *". Thus the cases in our jurisprudence dealing with personal injury by accident are applicable to cases in which there are claims for compensation under the occupational disease section.

■■ The term "work of any reasonable character" found in paragraphs 1, 2, and 3 of R.S. 23:1221 has been construed with reference both to a skilled laborer and to a common laborer. It is well settled in the law of this state that when an employee is trained, experienced, and skilled in a special trade, and when disability or injury causes a total disability to continue carrying on the trade or work for which alone the employee is suited by such training and experience and causes total disability to do work of a similar character, the disability must be construed as total disability to do work of any reasonable character within the meaning of the Workmen's Compensation Act. Ranatza v. Higgins Industries, Inc., 208 La. 198, 23 So.2d 45, and authorities there cited. On the other hand, if the employee is a common laborer, it is equally well settled that inability to do "work of any reasonable character" means that because of injury the laborer is unable to perform work of a kind similar to that which he was accustomed to perform. Hughes v. Enloe, 214 La. 538, 38 So.2d 225, and authorities there cited.

Wex S. Malone in his book Louisiana Workmen's Compensation Law and Practice, Chapter 13, Section 275, p. 334, states that common labor is not a calling, and that it indicates by its very term a lack of any

·calling; that "about the only overall re-quirement of the common laborer are physi-cal brawn and a willingness to do what-ever work is assigned to him"; that the common laborer "sells his labor in a broad, flexible market, and the tasks that may be expected of him vary immensely from job to job".

He then says:

"The best considered cases in which the problem of the total disability of the com-mon laborer has been presented have ap-proached the problem by considering the relative effect of the injury upon the plain-tiff's ability to compete with others in the common labor market. These decisions, however, are of comparatively recent date and they have been surprisingly few in number. Consequently, the formula sug-gested above has not been fully developed by our courts. In fact, the two most recent decisions of the supreme court ignored the test suggested above and resorted to a determination of whether plaintiff could do work of a kind similar to that which he performed prior to the injury. However, both opinions emphasized that the work need be only 'reasonably similar' to that of his former calling, and thus betrayed the need for greater flexibility when dealing with the case of the common laborer. * * *" (p. 335)

He then suggests "that the decisions can be reconciled under the principle that a common laborer is totally disabled when-ever his injury is of such character that it appears that he will be *substantially* handi-capped in competing with able-bodied workers in the common labor market. This formula affords the flexibility necessary to enable the court to pass an intelligent judgment upon the facts of each individual case". (p. 336)

■ To answer plaintiff's contention that he is totally and permanently disabled under the facts of this case we think it is neces-sary to determine whether he should be classified as a skilled laborer. He cer-tainly cannot be classified as a skilled laborer, for, as disclosed by the record, he was a plasterer's apprentice engaged in learning the plasterer's trade and would be required to work for four years as an apprentice in order to acquire the skill necessary to become a journeyman plas-terer. Plaintiff therefore cannot claim that his chosen calling is that of plasterer. Probably the most important factor is that the facts of this case disclose that the plaintiff here is not trained and experienced in the special trade of a plasterer. Whether an employee is a skilled laborer, of course, must be determined by the facts disclosed by any given case. Thus, has the disability of which the plaintiff here complains ren-dered him unable to perform work of a similar character to that which he was accustomed to perform, or, as stated by Malone, has the disability substantially handicapped this plaintiff in competing with

able-bodied workers in the common labor market?

Plaintiff himself admitted that he could do any of his work except that which would require him to come in contact with the chemical which produces dermatitis, and the doctor stated that in his opinion the plaintiff was not disabled.

A case very similar to the instant one, Lathers v. Schuylkill Products Co., La.App., 111 So.2d 530, 531, was correctly decided by the Court of Appeal, First Circuit, in 1959. In that case plaintiff was seeking compensation for alleged permanent and total disability. It was his contention that as a result of having had acute lead poisoning contracted on the job he was more susceptible to lead poisoning and could not safely work around lead or any product containing lead, and that for this reason he was permanently disabled within the meaning of the compensation statute. The lead poisoning was contracted in the lead kettle room of his employer where the plaintiff worked as a lead skimmer. The Court of Appeal stated that in determining whether the plaintiff was totally disabled it was necessary to determine whether he was a skilled or a common laborer. It then stated that "if a common laborer is injured and is thereby prevented from engaging in one or two, or even a few particular kinds of common labor, but is able to do other kinds of common labor, he is not totally disabled". After reviewing the facts the

court denied plaintiff compensation, stating: "Thus, if the injury he suffered precludes him from working around lead but does not substantially decrease his ability to compete in the general labor market he is not totally disabled". See also Johnson v. Travelers Ins. Co., La.App., 99 So.2d 372.

In denying plaintiff compensation in the instant case the Court of Appeal concluded that its decision in the case of Picquet v. Toye Bros. Yellow Cab Co., La.App., 77 So.2d 569, was controlling here, especially in view of the fact that the Supreme Court had refused to grant writs in that case. The plaintiff Picquet had been an automotive electrician for approximately 10 years, and in his work was required to clean various parts of automobiles which were undergoing repairs with various kinds of detergents, cleaning liquids or compounds, including a product known as Varsol. While engaged in his work he contracted the occupational disease of dermatosis. He contended that this disease was caused by the frequent use of the detergents, and that although he had recovered, he had developed an allergy as a result of which dermatitis would make its appearance and total disability would result if he permitted his hands and other parts of his body to come in contact with these detergents. The Court of Appeal refused to allow plaintiff compensation for total and permanent disability on the theory that his susceptibility to dermatitis resulted from a congenital

condition of his skin and had not been caused by contact with the detergents in his work and so could not be said to have come about "as a result of the nature of the work performed", as required by the occupational disease amendment of the compensation law. After further study it appears that we should have granted plaintiff's application for a writ of certiorari in that case, so that we might consider the record to determine whether plaintiff there was a skilled laborer, just as we have determined that plaintiff in the instant case is not a skilled laborer.

For the reasons assigned the judgment of the Court of Appeal affirming the judgment of the district court which dismissed plaintiff's suit is affirmed.