YARRUT, Judge.
This is a direct action by Plaintiff against the compensation insurer of his former employer, seeking maximum compensation for permanent and total disability, as well as statutory penalties and attorneys’ fee. The District Court rendered judgment for Plaintiff for $35 per week during disability, not to exceed 400 weeks, with 5% interest *99 on each past due installment until paid, and $31.00 for medical expenses, but no allowance of damages or attorneys’ fee. Defendant alone has appealed.
Plaintiff contends that, while employed by Defendant’s insured, he contacted “cement dermatitis,” formally termed “dermatitis venenata,” compensable as a total and permanent occupational disease, under LS A-R.S. 23:1031.1.
There seems to be no dispute of the essential facts or medical testimony, so that the re'sidual issue is whether a common laborer is entitled to the benefits of the cited statute for the aggravation of an occupational disease once the disease or illness abates, even though a renewed contact with the offending chemical, to which he is allergic, will probably cause a recurrence should he return to work.
Plaintiff, age 63, had been employed by Defendant’s insured and its predecessor, for over 43 years, as a common laborer, whose duties, inter alia, were: Operating machinery producing concrete products; loading and unloading trucks and railroad cars; cleaning gutters; washing trucks; loading and stacking bricks; and janitor, for his employer who was engaged in preparing and delivering building materials consisting of sand, cement, gravel, bricks, and ready-mixed concrete. Plaintiff’s wages were such that, if entitled to compensation, it would be at the maximum of $35 per week during the period of disability.
While at work in 1956, Plaintiff contacted the dermatitis for which he received medical treatment by Dr. V. Medd Henington from May 24, 1956 to November 10, 1958, during which compensation was paid. Following his medical discharge by Dr. Henington, Plaintiff returned to, and resumed, his former employment until laid off in January 1961, due to a reduction in his employer’s personnel.
In January 1961, Plaintiff experienced an exacerbation of his condition when again exposed to sand and gravel. This he endured without medical attention until July 7, 1961. He then consulted Dr. Leslie K. Mundt, a dermatologist, to whom he was referred by his employer. Dr. Mundt treated Plaintiff until September 5, 1961, when he discharged Plaintiff as “cleared up.” Plaintiff’s attorneys then referred him to Dr. H. B. Christianson of the Ochs-ner Clinic, who examined and skin-tested him on October 24, 1961.
Plaintiff testified when he attempted to work in January 1962 clearing trees killed by the freeze, he suffered a recurrence of the rash.
The only doctor testifying at the trial of the case was Dr. Leslie K. Mundt, a dermatologist, and his testimony was adduced on behalf of both Plaintiff and Defendant. Plaintiff did not produce the physician of his own selection to testify but it was stipulated that the reports of Dr. Christianson were to be received in evidence just as though Dr. Christianson had testified. Additional medical evidence in the record of this case was a report of Dr. V. Medd Henington, which report concerned Plaintiff’s pre-existing condition of chronic dermatitis venenata.
Dr. Christianson stated in his report concerning an examination of Plaintiff on October 24, 1961, that his examination revealed no evidence of a dermatitis at that time, and he could see no reason why the patient was not able to return to work. However, in view of his history of cement dermatitis, he should not be sent back to a job where he is exposed to such material. Dr. Chris-tianson also conducted a patch test and concluded that Plaintiff probably did have a cement dermatitis, but his skin was clear and he saw no reason why he should not be able to return to work.
Dr. Christianson submitted a second report on October 31, 1961, concluding that the reaction to the patch test was subsiding, and that no further observation or treatment was indicated, so he discharged Plaintiff.
*100 Dr. Mundt’s testimony was adopted by Plaintiff as part of his case. Dr. Mundt saw and treated him from July 7, 1961 until September 5, 1961 and diagnosed his condition as a contact dermatitis caused by cement. Upon his discharge from treatment, Dr. Mundt testified his condition had completely cleared, and that he could return to work though he should avoid contact with cement, because of his chronic condition that could manifest itself by further contact with cement; that Plaintiff was only disabled from the standpoint of being allergic to cement; that the condition experienced by Plaintiff was not painful, once it had cleared up and, on his last visit, Plaintiff did not have a rash.
Dr. Mundt further explained that this condition usually causes mild itching; sweating would aggravate any chronic dermatitis, since it could set up an irritation; that it is difficult to determine how much is due to cement and how much to scratching and rubbing, because either condition irritates the person.
While the District Judge gave no formal written reasons for judgment, the comments in the transcript during the course of the trial sufficiently give his reasons, viz.:
“In other words, our case today is to determine whether or not he is presently incapacitated on account of dermatitis, as a result of the infection, or whatever you want to call it, in June of 1961.
******
“In this case it’s evident from the evidence that this man had worked for the same firm or company doing the same work for a period of thirty-five or forty years — forty-five years, or something like that; that he was accomplished in this sort of work. It’s also evident that he is a common laborer. There is no question about that, but in the opinion of this Court, he contacted this dermatitis from being in contact with cement while he was on the job. Now, the recurrence of the dermatitis in 1961 was because he was re-exposed to it, if that is a good word, ‘Exposed.’ I don’t know that it is, but, in my opinion, the plaintiff in this case is entitled to $35 a week during the period of his disability, not to exceed four hundred weeks, * * * subject to any credit that you may have and subject to determining if he is later not totally disabled.”
Defendant contends the law is very clear due to recent pronouncements of both this Court and the Supreme Court interpreting the provisions of LSA-R.S. 23:-1031.1, Occupational Diseases. The jurisprudence seems clear that a workman is totally disabled by reason of a chronic skin disease when he is a skilled laborer and because of his chronic skin allergy he is unable to perform his specialized trade or skill, citing Olivier v. Liberty Mutual Insurance Company, 241 La. 745, 131 So.2d 50, which also holds that, once the reaction clears, a common laborer is not considered permanently disabled even though further contact with the irritant will produce a rash, because any disability he had was a pre-existing one and the employer is only required to restore him to his previous condition; further citing Lathers v. Schuylkill Products Co., La.App., 111 So.2d 530.
In Olivier v. Liberty Mutual Insurance Company, supra, the medical testimony preponderates that plaintiff was predisposed to his existing malady, i. e., cement dermatitis; and that, since plaintiff was not a skilled laborer, being only a plasterer’s apprentice, he could do any work except that requiring his contact with cement. Once plaintiff’s contact with cement ceased he had no residual of his allergy, and there was no sensitization.
It is to be noted that, in this case, there is both a residual of the allergy since Plaintiff suffers from manifestations of the disease at the present time, and there has certainly been sensitization as a result of having contracted the cement dermatitis. Both of these important points were substantiated *101 by Dr. Mundt. There is no testimony that Plaintiff was pre-disposed to an allergy from cement prior to his actual attack in 1956 or in 1961, notwithstanding he was in daily contact with cement products for over 35 years, when suffering his first attack in 1956.
The same opinion was expressed in Picquet v. Toye Bros. Yellow Cab Co., La.App., 77 So.2d 569, in which the employee was exposed to a detergent compound, Varsol, to which he had not been previously exposed and this compound caused his dermatitis condition. The facts there were substantially different from those here, in that Picquet was exposed to a substance with which he had not come in contact before, while Plaintiff here developed an allergic reaction and subsequent sensitization to a substance with which he had been working for over 35 years. It is difficult to conceive that this Plaintiff’s dermatitis was the result of a skin sensitivity to cement which remained latent for 35 years and only manifested itself in 1956.
The Court proceeded further in quoting the doctors for both Picquet and the Toye Bros. Yellow Cab Co. in their statements that the attack due to Varsol did not increase the sensitivity of plaintiff to dermatitis and that, after he had been cured from his manifestation of the disease, his skin was in exactly the same condition as it had been prior to the onset of the dermatitis. The Court stated further:
“If by allergy is meant a condition adversely affected by contact with such a liquid as Varsol, then he may be suffering from such an allergy, but if so, the allergy itself was not the result of contact but was a condition which existed always as the result of the sensitivity of his skin.”
The case of Glidden v. Alexandria Concrete Company, 242 La. 626, 137 So.2d 894, concerned a cement truck driver who learned how to operate his cement truck in four days and was employed for only six months, when he developed cement dermatitis. Dr. Hamilton testified that, as a result of chromate sensitivity, a change in the skin of plaintiff took place causing susceptibility to heat, produced either from bodily exertion or from surrounding weather conditions; which was concurred in by Drs. Henington and Jolly. This appraisal of the after-effects of chromate sensitivity caused by contact with cement was accepted by the Supreme Court, which pointed out that, for Glidden to be totally and permanently disabled, the after-effects of the disease must either retard complete recovery or otherwise impair his health. The Court found that the facts available were insufficient for it to determine whether or not bodily exertion and its resultant increase in body temperature and production of perspiration would retard plaintiff’s recovery and remanded the case for the taking of this essential medical testimony.
Our understanding of the remand in the Glidden case is that a workman may develop a sensitivity to other compounds or substances than the one that caused the initial dermatitis, which may reactivate the allergic condition in the total absence of the original sensitizing agent (cement). The medical testimony here is clearly to the effect that a sensitization has occurred in Plaintiff as a result of exposure to cement and its components.
We cannot find any manifest error in the judgment of the District Court in allowing compensation only for total, temporary disability, not to exceed 400 weeks, as Defendant has the right to check Plaintiff every six months
For the above and foregoing reasons, the judgment of the District Court is affirmed; costs of Plaintiff in both courts to be paid by Defendant
Affirmed.