SARTAIN, Judge.
Plaintiff, Don M. Haynes, instituted this action against his former employer, Atlas Construction Company, Inc. and its compensation insurer, Fireman’s Fund American Insurance Companies, alleging himself to be permanently and totally disabled and seeking workman’s compensation. From a judgment awarding compensation during the period of disability only, plaintiff has appealed.
On June 28, 1965, plaintiff, then 17, was employed by Atlas Construction Company, Inc., as a common laborer. While engaged in the performance of his duties, which mainly consisted in assisting in the production of concrete mats, Haynes, on July 16, 1965, splashed cement on various parts of his body. Subsequently, plaintiff experienced irritation and itching around the areas of his body which had come in contact with the cement. Shortly thereafter, Haynes’ employment, for reasons not pertinent to this appeal, was terminated.
Plaintiff was examined on July 23, 1965 by Dr. Joe C. Tilley, an acknowledged expert in the field of dermatology, who stated that Haynes suffered from exudative dermatitis, or “weeping rash”, which was found on his face and upper chest. Dr. Tilley stated that Haynes had a half dozen areas of such rash the largest being just over an inch in diameter. In addition, there was noted a dry scaling over the plaintiff’s hands and wrists. Dr. Tilley ran a patch test which revealed that Haynes is allergic to certain chromate ions present in cement. In Dr. Tilley’s opinion, the rash was caused by the splashing of the cement which occurred on the Friday prior to the examination. Dr. Tilley further testified that Haynes’ allergy is not congenital and that outbreaks of this rash could be expected if Haynes came in contact with cement in the future.
Appellant alleges that he is substantially handicapped in competing with able-bodied *389 workers in the common market and contends that, as a result, he is totally and permanently disabled. In order to buttress this contention, plaintiff relies on Robinson v. Travelers Insurance Company, La.App. 4 Cir., 150 So.2d 98. This case involved a common laborer who had worked for many years in the preparation and delivery of cement and ready-mixed concrete and who had contracted cement dermatitis as a result. Cognizance should be taken of the fact that Robinson developed a sensitization as a result of exposure to cement and its components. The court held that he was not entitled to permanent and total disability benefits for aggravation of the allergy even though renewed contact with cement and its components would probably cause recurrence should he return to work, but he was entitled to total temporary disability benefits.
The Robinson case must be examined in light of Olivier v. Liberty Mutual Insurance Company, 241 La. 745, 131 So.2d 50. In the Olivier case the Supreme Court held that a plasterer’s apprentice, who was not trained and experienced in the special trade of a plasterer and who could do any of his work except that requiring him to come in contact with the chemical which produced dermatitis, was not a skilled laborer and was not entitled to total and permanent disability as for an occupational disease because of dermatitis which he contracted in his work as an apprentice plasterer.
In reaching its conclusion that plaintiff was entitled to total temporary disability benefits not to exceed 400 weeks the court in the Robinson case distinguished the Olivier case and said:
“ * * * the medical testimony preponderates that plaintiff was predisposed to his existing malady, i. e., cement dermatitis ; and that, since plaintiff was not a skilled laborer, being only a plasterer’s apprentice, he could do any work except that requiring his contact with cement. Once plaintiff’s contact with cement ceased he had no residual of his allergy, and there was no sensitization." (Emphasis ours.)
The court went on to say that in the present case there had certainly been sensitization as a result of having contracted the cement dermatitis (plaintiff testified when he attempted to work in January, 1962, clearing trees killed by the freeze, he suffered a recurrence of the rash).
With regard to the sensitization issue, the court in the Robinson case considered Glidden v. Alexandria Concrete Company, 242 La. 625, 137 So.2d 894 and stated
“ * * * The Court found that the facts available were insufficient for it to determine whether or not bodily exertion and its resultant increase in body temperature and production of perspiration would retard plaintiff’s recovery and remanded the case for the taking of this essential medical testimony. Our understanding of the remand in the Glidden case is that a workman may develop a sensitivity to other compounds or substances than the one that caused the initial dermatitis, which may reactivate the allergic condition in the total absence of the original sensitizing agent (cement). The medical testimony here is clearly to the effect that a sensitization has occurred in Plaintiff as a result of exposure to cement and its components.”
In the opinion of Dr. Tilley, Haynes will not be subject to sensitization as a result of his allergy.
“Q Could he perform general labor on the day that you saw him except around cement where he would possibly be subject to this allergy?
A Within most contexts, yes, even though the heat and perspiration might make him worse. I don’t really think that this would disable him to the point that he could not do some form of general labor as long as he was not around the cement.
Q And certainly, then, he could perform any general labor as long as he *390 was not performing that general labor around cement or anything that had to do with chrome, is that correct ?
A That’s right.
Q I mean, if he had to push a wheelbarrow, say, on the afternoon of the day that you saw him, as long as it was not around cement he could do it, could he not?
A That’s right.”
Admittedly, contact with cement is frequently required in ordinary construction work, and plaintiff would perhaps be entitled to compensation for total temporary or permanent partial disability if he had shown that such construction work involving cement bears such a ratio to general employment available to the common laborer so as to substantially prejudice the claimant in competing with able-bodied workers for employment in the common market. However, the record does not disclose any facts or figures which reveal that cement work bears such a relation to the employment opportunities generally presented to the common laborer.
We feel that the facts of the Olivier case are apposite to and controlling of the present case and that plaintiff is not so substantially handicapped as to prevent him from competing with able-bodied men in a common labor market where there are many other jobs that would not bring him into contact with cement. Kemp v. L. L. Brewton Lumber Co., La.App., 168 So.2d 911.
The remaining issue involves plaintiff’s demand for statutory penalties and attorney’s fees (LSA-R.S. 23:1201.2) alleging in his petition that notwithstanding repeated demand upon defendant for compensation payments and medical attention, said defendant arbitrarily and capriciously failed and refused to furnish either. Notwithstanding the aforementioned allegations in plaintiff’s petition, the record is completely devoid of any evidence in support of plaintiff’s allegation of demands for compensation payments. As to the question of defendant’s refusal to furnish plaintiff with reasonable medical attention, the record does not support the finding that the defendant-employer, acted arbitrarily and capriciously in its refusal to furnish the same. Plaintiff testified that on the date prior to the termination of his employment he requested permission to see ■ the company doctor. He went to St. Francisville and was advised by the doctor that he would have to have a “slip” from the company before the doctor could treat him. He then returned to the job site and allegedly notified his employer of the doctor’s statement and the employer again insisted that written authorization was not necessary. The job superintendent testified that he told the plaintiff that the company would be responsible for plaintiff’s medical needs if such were the result of his employment but that the company would not be responsible if plaintiff was suffering from “ringworms”. Plaintiff did not tell the superintendent specifically that it was necessary to receive written authorization for medical treatment before the company’s doctor would treat him. Plaintiff elected to wait and be treated by his family physician. The pertinent testimony concerning this point is as follows: (tr. 84)
DONALD HAYNES
“A. I told them I would — I would go to my family doctor that evening when I got home. I told them I would like to go back to work, so I went on back to work.”
Defendant’s superintendent testified: (tr. Ill)
“A. Mr. Hawkins, who he refers to as Mr. Pete, was his foreman, and he brought Haynes to me about 1:00 o’clock one afternoon right after lunch; and told me that he wanted to go to the doctor. And I told him that if he went to the doctor — which was his right and privilege — that if the sores which he said was on his face and were on his face was *391 caused by the cement, the company would be liable for it, and would pay all of the bills, but if they were not, well, then he would have to foot the doctor bills.”
It appears to us from the examination of the above and related testimony that there was an apparent lack of communication between plaintiff and his employer relative to the medical treatment sought at the time by plaintiff.
In view of plaintiff’s statement that he would wait to see his personal physician, it was incumbent upon plaintiff to submit his physician’s statement for services rendered to defendant for payment. The record again is silent as to any demand being made upon defendant for the payment of the $30.00 medical bill rendered by plaintiff’s own physician.
For the above and foregoing reasons the decision herein appealed is affirmed at appellant’s costs.
Judgment affirmed.