TATE, Judge
(dissenting from denial).
I respectfully dissent from the denial of rehearing. In my opinion, our majority commits an error of law when we reverse.
In an able opinion, the trial court thoroughly analyzed the record- and correctly found, in my opinion, that the plaintiff had sufficiently proven his disability. As the court noted, because of his double vision (coupled with his pre-existing nearsightedness) the plaintiff is now required to wear highly magnified glasses. Because of his double vision, he cannot judge distances nor distinguish details accurately. Because of this vision defect resulting from the accident, he judges objects to- be closer than they actually are, nor could he, for instance, distinguish an ashtray on the table in the courtroom less than 20. feet away from him. The evidence preponderates that it is dangerous for the claimant to work around oil field machinery and operations, as required by his semi-skilled occupation.
It is well settled that a skilled or semiskilled employee “is regarded as totally disabled whenever an accident causes the loss of those physical faculties which had enabled him to earn a living at his chosen calling, and this is true even though he is able to qualify for a job of a different nature.” Malone, Louisiana Workmen’s Compensation (1951), Section 275, p. 334; Oliver v. Liberty Mutual Ins. Co., 241 La. 745, 131 So.2d 50; Brannon v. Zurich General Accident and Liability Insurance Co., 224 La. 161, 69 So.2d 1.
In failing to find this 45-year-old workingman disabled, the majority lightly indicated that this man was a common laborer. Because he was not disabled from performing other forms of common labor than the duties of this oil field work, we reverse the trial court’s award for disability. By doing so, we commit error of law, for the claimant is in fact a semi-skilled worker.
During his four years previous employment at high weekly wages at oil field work, the claimant’s duties had included working around powerful machinery. In my opinion, his duties required industrial know-how beyond that of a common laborer replaceable at will from the general labor market. In fact, he had gone into oil field work after some six years experience as a foreman directing common laborers, but he had left his job as foreman in order to accept the higher paying and more skilled work of the oil fields.
In holding this workingman to be a common laborer, our majority apparently base this assumption upon the holding in the case of Anderson v. Rowan Drilling Co., La.App. 3d Cir., 150 So.2d 828. There, a temporary oil field worker was found not to be sufficiently skilled, so that a mere dis-abilty to return to oil field work did not entitle him to compensation, for he was *584 able to perform other laboring duties without fear of disability or danger.
We overlook that, as the Anderson case noted, the determination in each case to some extent must depend upon its own particular facts, including the work experience of the employee. Under the evidence here as correctly evaluated by the trial court, the claimant cannot return to' the higher paid oil field work in which he earned his living for several years before the accident. He is therefore entitled to compensation for total and permanent disability. Smith v. Travelers Insurance Co., La.App. 3d Cir., 174 So.2d 241.
As a matter of fact, double vision in a lineman resulting from his industrial accident was held to be totally disabling by our Supreme Court in Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9. This leading decision of our Supreme Court noted that, due to the double vision and the prism glasses the worker was required to wear, he could not safely perform the work of the occupation in which injured and was under a competitive disadvantage in securing any type of work.
In the present instance, the double vision (added on to the plaintiff’s pre-existing nearsightedness) undoubtedly greatly hindered the plaintiff’s ability to perform his duties safely. While the headaches and discomfort can be reduced by wearing an eye patch, nevertheless (as noted in the Knis-pel case), the employee is not required to sacrifice his remaining sight in the eye by doing so. (As a matter of fact, his sensitivity to> sunlight and the headaches resulting from his double vision, in my opinion, likewise disable the plaintiff from performing even common labor.)
The plaintiff is now doing light inside work in a college dormitory recreation room. The fact that the plaintiff tried and did return to oil field work for several months in order to support his wife and children (before he had to quit because of eye trouble), and that he has also sought to obtain employment as a guard or truck driver in order to do so, does not outweigh the preponderant lay and medical evidence that the plaintiff is disabled by reason of his work-caused double vision and his consequent lack of visual acuity or distance-judgment, which produce also his sensitivity to sunlight and to recurring headaches.
I therefore respectfully dissent from our reversal of the trial court and its well-reasoned findings supported by the preponderance of the evidence.