273 So.2d 712 (1972)
Mary CHARLESTON
v.
VERI-FRESH POULTRY COMPANY, INC.
No. 8973.
Court of Appeal of Louisiana, First Circuit.
October 2, 1972.
Rehearing Granted November 12, 1972.
On Rehearing February 1, 1973.
Rehearing Denied March 14, 1973.
Writ Denied May 17, 1973.
*713 John I. Hulse, IV, Hammett, Leake & Hammett and Sherman F. Raphael, New Orleans, for appellant.
Henry A. Mentz, Jr., Mentz & Ford, Hammond, for appellee.
Before ELLIS, BLANCHE and TUCKER, JJ.
Rehearing En Banc Denied March 14, 1973.
TUCKER, Judge.
This is an action for the recovery of workmen's compensation benefits by Mary Charleston (now Dudley) who primarily seeks total and permanent disability payments plus interest, penalties, and attorney's fees, based upon allegations that she has acquired dermatitis while employed in defendant's chicken processing business. Alternatively, she seeks the lesser benefits accorded a finding of permanent-partial disability or the weekly benefits supposedly due her for the time that she was afflicted with this skin condition.
On October 5, 1968, the plaintiff was employed as a chicken eviscerator in the defendant's Hammond, Louisiana, plant and, in the course and scope of her employment, was required to remove entrails from chickens on a production line by reaching inside the bird and removing the various organs with her hands. On the subject day, while performing that job, she lodged a chicken bone under the nail of the middle finger of her right hand which caused immediate pain. She was initially treated by a plant employee who administered minor first aid and was then sent to Dr. J. D. Thames, a local physician, for treatment. He saw her on three occasions in that month for treatment of the finger and, during that time, she continued in that employment.
In December of 1968, the appellant again saw Dr. Thames on four occasions with complaints similar to that for which he originally treated her and his examinations at that time indicated that an infection which had originally occurred around the would still existed. When he last examined her on December 18, Dr. Thames determined that she had sufficiently healed to return to work but she was specifically advised by him not to perform any job which would require her hands to be continuously in water or other liquids. He so advised the defendant on December 23, 1968.
The plaintiff, however, remained on the job at Veri-Fresh until March 7, 1969. In that period, she did other jobs (particularly that of a gizzard cutter) assigned to her which, according to her testimony, were also of a "wet" nature. In the weeks that followed the original puncture wound, she began to suffer from a rash or dermatitis on her hands which Dr. Thames noted in his December examinations. On February 15, 1969, she was initially examined by Dr. Nathan D. Forrest, a general practitioner, who also found that she had a lesion in the web spaces of both hands which he diagnosed as a chronic fungal and bacterial infection. He treated her with various medications until March 31, 1969, continuously instructed her to do no "wet" work *714 or to wear gloves on the job, and found that this condition continually improved up to her last visit as previously indicated. Upon deposition, he affirmatively stated that she was in noway prevented from doing work which required no moisture on her hands and that he advised her accordingly.
Although Dr. Forrest had no independent recollection of the occasion, it seems that subsequent to her last visit to him, he referred her to Dr. Henry W. Jolly, Jr., a specialist in dermatology, in Baton Rouge, La., who recalled that he received a telephone referral of the patient from Dr. Forrest. This specialist first examined the plaintiff on April 4, 1969, and found essentially the same symptoms present as did Dr. Forrest, including the swelling and redness of the infected area on the third right finger and the dermatitis on the left hand. He stated that he treated her with X-rays, ultraviolet light, and that he prescribed certain home treatments for her which subsequent visits revealed to be successful and that a marked improvement was found in her condition on his second examination of her. He stated that he also directed her not to engage in any work which required her hands to be wet but concluded, as did Dr. Forrest, that she could be employed in any capacity which allowed her hands to remain dry.
Pursuant to trial on the merits, judgment was rendered on behalf of defendants and the plaintiff's suit was dismissed. With slight alternations, we affirm the judgment of the trial court.
In the courts below, the defendant strenuously argued and has re-urged here, a peremptory exception of prescription to the plaintiff's action. We find, however, that the trial judge correctly decided the question of prescription adversely to the defendant. That exception is based upon the fact that the plaintiff's original would to her hand took place on October 4, 1968, and the suit was not filed herein until October 31, 1969. However, as the difficulty with which the plaintiff was afflicted was not diagnosed and did not fully manifest itself until her December examinations by Dr. Thames, we find that the provisions of LSA-R.S. 23:1209, preclude the validity of such a plea. As this court stated in Mella v. Continental Emsco, La.App., 189 So.2d 716 (First Cir. 1966):
"* * * [i]t is also now well established that where the injury does not manifest itself immediately upon the occurrence of the accident, the one year's prescription provided by the latter part of the applicable statute does not begin to run until the injury (disability) becomes apparent, provided the suit be instituted within two [2] years of the date of the accident. Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218; Johnson v. Cabot Carbon Company, 227 La. 941, 81 So.2d 2; Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522."
As for the compensability of the plaintiff's claim, the Supreme Court of this State has had occasion to consider claims under our compensation law for various disabilities which have arisen from dermatitis, that being an occupational disease specifically listed as such in LSA-R.S. 23:1031.1. In Olivier v. Liberty Mutual Insurance Company, 241 La. 745, 131 So.2d 50 (1961), that court announced certain principles particularly applicable to the case at bar, in these terms:
"The term `work of any reasonable character' found in paragraphs 1, 2, and 3 of R.S. 23:1221 has been construed with reference both to a skilled laborer and to a common laborer. It is well settled in the law of this state that when an employee is trained, experienced, and skilled in a special trade, and when disability or injury causes a total disability to continue carrying on the trade or work for which alone the employee is suited by such training and experience and causes total disability to do work of a similar character, the disability must *715 be construed as total disability to do work of any reasonable character within the meaning of the Workmen's Compensation Act. Ranatza v. Higgins Industries, Inc., 208 La. 198, 23 So.2d 45, and authorities there cited. On the other hand, if the employee is a common laborer, it is equally well settled that inability to do `work of any reasonable character' means that because of injury the laborer is unable to perform work of a kind similar to that which he was accustomed to perform. Hughes v. Enloe, 214 La. 538, 38 So.2d 225, and authorities there cited.
"Wex S. Malone in his book Louisiana Workmen's Compensation Law and Practice, Chapter 13, Section 275, p. 334, states that common labor is not a calling, and that it indicates by its very term a lack of any calling; that `about the only overall requirement of the common laborer are physical brawn and a willingness to do whatever work is assigned to him'; that the common laborer `sells his labor in a broad, flexible market, and the tasks that may be expected of him vary immensely from job to job' * * *
"He then suggests `that the decisions can be reconciled under the principle that a common laborer is totally disabled whenever his injury is of such character that it appears that he will be substantially handicapped in competing with able-bodied workers in the common labor market. This formula affords the flexibility necessary to enable the court to pass an intelligent judgment upon the facts of each individual case.' (p. 336)"
We find no indications in the case law that this doctrine has, in any way, been eroded. See Haynes v. Atlas Construction Co., La.App., 199 So.2d 387 (First Cir. 1967) and authorities cited therein.
We are unable to hold that the appellant is a skilled, trained employee who has been deprived of a specialized trade by her dermatitis affliction. While this unfortunate ailment has prevented her from engaging in work that required moist hands, two general practitioners and a specialist in dermatology have concluded that she was fully capable of doing dry work. We gather from their depositions that both Drs. Forrest and Jolly note an immediate and marked improvement when "wet" work was ceased. The conclusion is most compelling that the plaintiff is not handicapped, as a common laborer, while competing in the open job market for any of the numerous jobs available which require no immersion of the hands. In that connection, we note the uncontradicted testimony of the defendant's Vice-President, James R. Tricou, to the effect that in the defendant's operation alone, there are sixteen jobs requiring no wetness of the hands. We find the record to be devoid of any proof that the appellant could not find work that was suitable for her or that she attempted to locate such work. Therefore, her claim for total and permanent and permanent-partial disabilities must be rejected.
Similarly, we find her claim for weekly benefits throughout the entirety of her visitation to Dr. Jolly, or to August 31, 1970, to be without merit. This conclusion certainly must be reached for any claim from her initial injury to March 7, 1969, as she was fully employed at Veri-Fresh until that date. Thereafter, as evidenced by her statement in an application form for unemployment compensation benefits, she was available and able to work in jobs not requiring wet hands. This substantiates completely Drs. Forrest and Jolly's diagnosis of her condition and limitations at that time. Nowhere does the record evidence the fact that at any certain time, the plaintiff was completely disabled from doing all reasonable forms of work. Dr. Jolly's testimony is only that he saw her on various dates for a period of months, there being no description of her condition on each examination; we find no evidence to the effect that during those months the dermatitis prevented her from doing dry work. To the contrary, the expert testimony leads very definitely to a contrary conclusion.
*716 The appellant also specifies as error the fact the trial Judge did not cast the defendant in judgment for all medical expenses incurred by the plaintiff in connection with her treatment. We note that in December of 1968 Dr. Thames specifically instructed the plaintiff to do no more work which would require her hands to be in water or other liquids. Yet, despite the physician's instructions, the record does not show that she registered any protest to her being assigned to the same kind of work by her employer, and that she continued doing work involving contact with moisture until March 7, 1969. We are unable to hold the defendant responsible for medical expenses incurred by the plaintiff which were occasioned as a result of the violation of her physician's advice. The record does not reflect the total amount of Dr. Thames' charges for his medical services in treating the plaintiff during the month of December, 1968. The absence of proof on this score does not require a remand of the case, as unquestionably, the defendant is responsible for unpaid medical bills which arose in advance of Dr. Thames' instruction to the plaintiff that she cease work which required her hands to come in contact with moisture. Any other medical expenses subsequent to that time must be the responsibility of the plaintiff.
For the above and foregoing reasons the judgment of the lower court is affirmed at appellant's costs.
Affirmed.

ON REHEARING
ELLIS, Judge.
We granted a rehearing in this matter because we wished to reconsider our conclusion that plaintiff is not handicapped while competing in the open job market as a common laborer. We are now persuaded that in so finding, we erred. The facts of the case are correctly set forth in our original opinion, and will not be reiterated herein.
The evidence shows that plaintiff is an uneducated, unskilled black woman, living in a rural community. It also shows that she is unable to do any form of work which involves getting her hands wet without bringing on a recurrence of the skin condition which resulted from her injury and the subsequent infection. The same is true if she works in gloves, causing her hands to become moist from perspiration. Certainly, she is precluded from working as a domestic servant. Further, we note that, although her employer, the defendant, testified that there were sixteen "dry" jobs available in the plant, none of these were offered to plaintiff, although defendant had knowledge of her condition.
We now hold that plaintiff is substantially handicapped in competing in the common labor market for a job, considering her training, sex, education, and the availability of work in her area. Under the authorities applicable, cited in the original opinion, she is considered to be totally and permanently disabled within the purview of the workmen's compensation law. See also Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138 (1963).
It appears from the record that plaintiff continued to work until she was discharged on March 11, 1969. Until that time, we find that she was employed by defendant, and fully earned her salary, and that she is entitled to compensation benefits from that date.
We do not find that penalties and attorneys fees are due by defendant. A look at the judicial history of this case will show that there was nothing unreasonable about the refusal of defendant to pay the benefits demanded.
The judgment appealed from is reversed, and there will be judgment herein in favor of plaintiff and against defendant for $35.00 per week for 400 weeks, beginning March 11, 1969, with legal interest on all *717 past due installments from due date until paid, for all medical expenses, and for all costs of these proceedings.
Reversed and rendered.