BEER, Judge.
Plaintiff-Appellee, Anna Mae Lewis, a twenty-five year old mother of three young children, was employed by the housekeeping department of Defendant-Appellant, St. Charles Parish Hospital Service District, d/b/a St. Charles Hospital, in February of 1973.
Her duties as maid in the housekeeping department consisted primarily of cleaning *844 the various rooms and hallways of the hospital. She made use of a certain phenolic detergent germicide which, she alleges, has caused depigmentation of the skin of both hands particularly the dorsum of the fingers and the distal portion of the hands in patched areas originally comprising approximately seventy-five percent of her right hand and fifty percent of her left hand. Repigmentation has now reduced the original depigmentation by about fifty percent.
Four qualified physicians specializing in the field of dermatology essentially agree that the' depigmentation noted above most probably resulted from contact with a phenolic detergent germicide variously referred to as Micro-Phene Bacteriacidal Detergent or Micro-Biocidal Detergent. The nomenclature is unimportant; the record supports the conclusion that the phenol content of the cleaning compound that was used at the hospital caused the depigmentation of Mrs. Lewis’ hands.
Anna Mae Lewis is black. As a result, the depigmentation is more obvious insofar as the cosmetic consequences are concerned.
Dr. Guinter Kahn of the Division of Dermatology of the University of Colorado Medical Center in Denver, acknowledged by all of the physicians who testified as well-informed in this particular specialized field, has written a scholarly article with respect to allergic reaction to phenols and the resulting depigmentation which further supports the conclusion noted above but Dr. Kahn restricts his interesting article (which is in evidence) to a consideration of cause and effect and does not deal with any possible disability that this allergic reaction may provoke.
The physicians who testified either by deposition or at the trial generally agree that the depigmentation occasioned to Mrs. Lewis had not caused any loss of integrity of the skin of her hands nor resulted in any broken skin or scaling or extensive or severe blistering but also find that the contact effects did — in the acute state — cause some redness and itching and did produce one small blister (this, during the course of a patch test administered under controlled conditions when she was being seen by one of the physicians). None of the doctors who testified were able to say with any certainty that Mrs. Lewis would experience complete repigmentation although there is clear indication that there has been considerable repigmentation since the onset of the problem as evidenced by Dr. F. E. Pal-omeque’s observation (after conducting an examination of Mrs. Lewis in open court) that repigmentation has progressed “a great deal” since his initial examination.
The medical evidence indicates that Mrs. Lewis’ present condition does not cause any perceptible degree of pain and that its only serious impairment or obstacle to her general employment is that she should avoid direct physical contact with detergents which are composed of chemical compounds that include phenol; that is, phenolic compounds. However, one further conditional impairment to general employment exists due to the finding, by some of the doctors, that the areas of her hands which continue to be depigmentized are probably more susceptible to sunburn than the other parts of her body. This finding restricts her outdoor employment opportunity to some extent. In this respect the doctors agree that the sun would not be a factor if the sun’s effects were controlled by a sun screen type lotion or gloves.
There is some consensus of agreement among the doctors that the cosmetic effect of depigmentation can, even in a stable person such as Mrs. Lewis, be emotionally disconcerting. However, no direct testimony on this issue was elicited from any expert in the field of psychiatry and we do not find any evidence in the record to form the basis for a claim of disability based upon any sort of neurosis. No testimony whatsoever was introduced to show that the cosmetic problem noted above has, *845 in any way, actually hindered Mrs. Lewis’ ability to obtain other employment subsequent to her quitting her job as maid with the hospital. Quite the contrary, she admits on cross-examination that she has not sought employment at any other place or in any other field of endeavor. She gives no reason or explanation for this.
Mrs. Lewis testified that her contact with the phenolic detergent had more far-reaching consequences than those described by the physicians who have treated and examined her. She complains of burning sensation, redness, some blistering and itching. However, she admits on cross-examination that the itching was directly dependent on her actual use of the phenolic compound. She acknowledges being the author of a general observation to the effect that if she did not use “the stuff” (cleaning detergents containing phenol) it doesn’t itch — if she uses it at all, it itches.
Mrs. Lewis filed this workmen’s compensation suit claiming permanent and total disability in March of 1974 and the matter was tried in the Twenty-Ninth Judicial District Court on October 23, 1974.
 The trial court correctly determined that Mrs. Lewis was engaged in hazardous employment within the contemplation of the law as defined by LSA-R.S. 23:1035 and further determined, correctly, that the depigmentation hereinabove described took place within the course and scope of her employment and as a result thereof.
The trial court further concluded that she was totally and permanently disabled and awarded her:
“* * * the sum of THIRTY-TWO THOUSAND FIVE HUNDRED & NO/100 ($32,500) DOLLARS payable at the rate of SIXTY-FIVE & NO/100 ($65) DOLLARS per week beginning on December 14, 1973 not to exceed five hundred (500) weeks, with interest at the rate of twelve (12) per cent per an-num as provided under R.S. 23:1201.2, •on each of the past due payments from its due date until paid, and ordering that each accrued amount with interest from the due date of each until paid at said rate be in a lump sum, subject to credit for any compensation that may have previously been paid by the defendant.”
The court entered an additional decree as follows:
“IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT: Plaintiff recover judgment against the defendant for all medical and incidental expenses up to the maximum sum provided by law, with interest at the rate of twelve (12%) percent per annum from the date of judicial demand until paid, subject to appropriate credit for any payments that may have been made on that score by defendants. The fee for all experts be taxed as court costs. All experts recognized by this court and testifying in open court are to be paid a $200 expert fee, all other experts testifying by deposition are to be paid an expert fee of $100. All other claims be and they are hereby denied. All court costs are to be assessed against defendants.”
Defendants-appellants, St. Charles Parish Hospital and its insurer, Argonaut Southwest Insurance Company timely appealed that judgment to this court.
We conclude that the judgment in its present form cannot stand.
There is no serious contention that Mrs. Lewis could be entitled to payments of weekly benefits in an amount greater than $48.10. Her rate of pay was $1.85 an hour which amounts to $74.00 per week. LSA-R.S. 23:1021(11). She could not be entitled to weekly benefits greater than $48.10. (65% X $74.00). LSA-R.S. 23:1221 (2).
 The trial court’s decision to render a lump sum judgment of $32,500 was erroneous. Although the court may grant *846 one award to cover the weekly benefits that have accrued as of the entry of judgment, it cannot make a lump sum award for future benefits. Hull v. Liberty Mutual Ins. Co., 236 So.2d 847 (La.App.1st Cir. 1970) writs denied 256 La. 862, 239 So.2d 361 (1970).
Having determined that defendant’s actions in denying liability were not arbitrary or capricious, the court erred in awarding interest at the rate of twelve percent; the proper interest rate being the “legal rate” of seven percent. LSA-C.C. Article 2924; Panebiango v. Main Insur. Co., 293 So.2d 536 (La.App.4th Cir. 1974); Lanclos v. Homer Knost Const. Co., 258 So.2d 224 (La.App.4th Cir.) writs refused 261 La. 467, 259 So.2d 915 (1972).
Thus, even an award based upon a finding of permanent and total disability would have to be substantially recast taking all of the above into account.
However, we are not able to agree with the trial court’s determination that Mrs. Lewis is permanently and totally disabled. As we review and analyze the generally uncontradicted testimony of the competent physicians who testified in this case a rather clear picture unfolds.
It becomes evident that the restrictions imposed upon Mrs. Lewis’ future employment opportunities are minimal. All four physicians indicated that any field of employment was open to her other than those housekeeping type jobs which involved direct contact with phenolic cleaning compounds. Difficulty which might be encountered with outdoor employment is obviated by the use of sun screen type lotion which all agree will eliminate the effects of exposure to the sun. The record lacks proof of any actual limitation of job capabilities from the standpoint of ability to perform or proof that the cosmetic effects of the depigmentation imposes an onerous burden on Mrs. Lewis in seriously seeking or securing employment. Her position at the hospital could not be characterized as other than that of an unskilled laborer. Her job did not require, nor did she possess, any special skill, training, or preparation that were prerequisite to her having been offered the position. The job description primarily detailed duties requiring only the most basic and fundamental performance of daily cleaning chores.
As the special skill or training required for a job decreases, the range of different possibilities for future employment broadens. An unskilled laborer will not be deemed totally incapacitated when she is unable to return to identical duties when it appears that she is fully able to adequately function in another, though dissimilar, area of the general labor market. A condition that might be disabling in certain limited specific jobs can be irrelevant in others. Ory v. Metal Building Products Co., Inc., 265 So.2d 338 (La.App.4th Cir. 1972); Flowers v. E. M. Toussel Oil Co., 190 So.2d 147 (La.App.4th Cir. 1966), writs refused 249 La. 835, 191 So.2d 639 (1966). If an unskilled laborer is prevented from engaging in one or two, or even a few particular kinds of common labor but is able to do many other kinds of common labor, she is not totally disabled. Olivier v. Liberty Mutual Ins. Co., 241 La. 745, 131 So.2d 50 (1961).
Each case rests on its own particular facts. Roberie v. Ashy Const. Co., Inc., 215 So.2d 857 (La.App.3rd Cir. 1968). In cases of this nature, the test to be applied is whether the injured employee can no longer substantially compete for regular employment with other able-bodied workers in the flexible market for common labor. Comoletti v. Ideal Cement Co., 147 So.2d 711 (La.App.1st Cir. 1962).
We conclude that the nature and extent of the partial depigmentation does not so preclude Mrs. Lewis from doing “work of any reasonable character” as provided in R.S. 23:1221(2) as to cause her to be totally and permanently disabled within *847 the meaning of the workmen’s compensa-. tion act.
We do, however, find that Mrs. Lewis has experienced a degree of partial disability which falls within applicable provisions of LSA-R.S. 23:1221 (3).
A claim for benefits under this provision of the act was not specifically sought in plaintiff’s original petition for permanent and total disability. Nevertheless, we conclude that in view of the remedial purpose of the act, an injured workman’s claim, which is provided for in some manner by the act, will not be disallowed simply because meritorious contentions in support of a particular type of injury were not specifically raised in the pleadings. Thus, even though compensation for partial disability was not specifically sought in the trial court (where only an award for permanent disability was claimed) we should nevertheless allow compensation for partial disability.
In Babineaux v. Great American Ins. Co., 245 La. 718, 160 So.2d 591 (1964) the Supreme Court stated:
“It is obvious to us that by its adoption of Act No. 85 of 1926, shortly after the release of the decision in the Bell case, the legislature intended to liberalize the compensation act and extend coverage so as to include, as nearly as possible, recovery for every type of injury suffered by a workman while acting within the course and scope of his employment. However, realizing it to be almost impossible to provide for every conceivable loss, the legislature inserted what is now R.S. 23:1221(4)(o) to permit the courts to arrive at what might be considered a just and reasonable computation of loss when the injury sustained does not fall squarely within the strict and narrow confines of those set out above in this same section under the specific injury schedule in subsection (4).”
Although this is not a R.S. 23:1221 (4) (o) case, the observation is important to show the manner in which the act is to be interpreted.
Accordingly, we deem that Mrs. Lewis has experienced a partial disability to do work of any reasonable character and thus is entitled to benefits as outlined in LSA-R.S. 23:1221(3).
Mrs. Lewis has not sought employment in any of the various fields of endeavor that are clearly open to her. Thus, there is no evidence in the record upon which we can determine the wages that she is “able to earn thereafter” as provided in LSA-R. S. 23:1221(3) in order to then determine the “difference” between that amount and her pre-injury rate of $74 per week.
We do not feel that the difference would be substantial in view of the limited effect that her disability has actually produced.
However, the record established that the trouble-causing germicides were widely used in industrial cleaning; that the depig-mented area, because of decreased resistance, was more susceptible at least to sunlight and perhaps to other chemicals or irritants;[1] and that the depigmentation was unsightly to some extent and to that extent could be detrimental to obtaining employment at jobs in which an unblemished appearance was desirable.[2]
*848 This case presents a marginal situation-plaintiff’s earning capacity was definitely impaired, but plaintiff was still able to do many things to earn a livelihood and definitely was not totally disabled. We believe that we should allow some recovery for a work-connected condition resulting in some earning impairment, but also believe that we should reserve to either party the right to reopen the case in the event the condition worsens or improves.
All circumstances considered, we set the award at the statutory minimum of $17.50 per week, during the period of disability, but not beyond three hundred weeks. Furthermore, we find that she is clearly entitled to reimbursement for those proven out-of-pocket medical expenses which our computation indicates amount to a total of $115.68.
The judgment of the Twenty-Ninth Judicial District Court for the parish of St. Charles dated January 28, 1975 is annulled and set aside.
It is ordered, adjudged and decreed that there be judgment herein in favor of Plaintiff-Appellee, Anna Mae Lewis, and against Defendants-Appellants, St. Charles Parish Hospital Service District d/b/a St. Charles Parish Hospital, and Argonaut Southwest Insurance Company, in solido for workmen’s compensation benefits in the amount of $17.50 per week for three hundred weeks commencing on December 14, 1973 with interest at the legal rate on each of the past due payments from its due date until paid;
It is further ordered, adjudged and decreed that there be judgment herein in favor of Plaintiff-Appellee, Anna Mae Lewis, and against Defendants-Appellants, St. Charles Parish Hospital Service District d/b/a St. Charles Parish Hospital, and Argonaut Southwest Insurance Company, in solido in the amount of $115.68 representing out-of-pocket medical expenses incurred by Plaintiff-Appellee;
It is further ordered, adjudged and decreed that the fees of all experts shall be taxed as court costs. The experts recognized in the trial court who testified in open court are awarded expert fees in the amount of $200 and the experts testifying by deposition are awarded expert fees in the amount of $100.
All costs in the trial court and in this court to be borne by Defendants-Appellants, St. Charles Parish Hospital Service District d/b/a St. Charles Parish Hospital, and Argonaut Southwest Insurance Company.
Original judgment annulled and set aside; judgment recast and rendered.

. Plaintiff was first examined for the condi-' tion in September, 1973 and left work in December, 1973 at one dermatologist’s suggestion that she “change employment.” She was still losing color on January 20, 1974. ■ Plaintiff, exhibited some irritation on one visit, which this doctor attributed to toilet soaps and advised use of milder soaps.
Another dermatologist in February, 1974 (five days after an examination revealed no findings other than redness) found swelling after plaintiff had cleaned fish, although plaintiff reported no previous difficulty in this regard.
None of the three dermatologists called by plaintiff examined her after March, 1974.

. R.S. 23:1221(4) (p), authorizing an award for disfigurement about the face and head, is a legislative recognition that disfigurement *848 has some detrimental effect upon the ability to obtain employment. Considerations in setting the amount of the award are the degree of disfigurement and the type of plaintiff’s work or trade.