LEMMON, Judge.
The sole issue in this appeal by the workmen’s compensation insurer of plaintiff’s employer is whether the medical evidence supports the trial court’s finding that plaintiff was totally disabled. Defendant contends plaintiff’s permanent loss of 10 degrees at the extreme of his range of wrist motion constitutes only a partial disability, for which full compensation benefits have been paid.
At the time of the accident plaintiff, a 54-year old unskilled laborer, was employed at a service station as a “driveway man,” primarily to dispense gasoline and motor oil. He performed no mechanical work, but occasionally fixed flat tires and washed and lubricated cars.
On October 1, 1970 plaintiff fell while on the job and injured his right wrist. His -employer sent him to Dr. Arthur Axel-rod, a general surgeon, who diagnosed a fracture of the distal end of the radius, performed a closed reduction, and applied a long arm cast. The doctor removed the cast in about six weeks and began plaintiff on a program of physical therapy, which included whirlpool treatments and active exercises.
Plaintiff progressed slowly and was encouraged to actively use and exercise his wrist. On January 8, 1971 Dr. Axelrod recorded plaintiff’s condition as “much improved” and released him to return to work (although in fact plaintiff had begun similar employment at another service station two weeks earlier). On January 21, 1971 Dr. Axelrod noted slight additional improvement. When plaintiff exhibited “good motion” at a March 23, 1971 examination, the doctor discharged him, feeling he had completed a satisfactory recovery.
While under treatment by Dr. Axelrod, plaintiff was examined by Dr. Russell Grunsten, an orthopedic surgeon, in February, 1971, about a month after plaintiff had returned to work. Dr. Grunsten found a 15-degree loss of supination (turning palm upward), a 10-degree loss of dorsi-flexion (pulling wrist backward), a 15-de-gree loss of volar flexion (bending wrist downward), and a normal range of pronation (turning' palm downward). He felt the mechanical interference with the range of motion could be reduced to some extent *381 with physical activity, but that there would be some permanent partial disability.
On July 6, 1971 Dr. Grunsten reexamined plaintiff and found his range of motion had slightly improved in supination and volar flexion. He also noted plaintiff had full mobility of his fingers and of wrist motion to either side. Feeling plaintiff had achieved a stable status, he assigned a 10% to 15% permanent partial disability, related to the function of the wrist and hand as a unit. He attributed about half of the permanent disability to motion loss and the other half to expected arthritic changes which normally result from joint injuries.[1] He opined that this disability would not interfere with normal work activities or cause substantial discomfort, and that plaintiff would not sustain further loss of motion.
After this examination defendant discontinued compensation payments, having paid compensation benefits for 41 weeks and all medical expenses to date.
About nine months later, on April 19, 1972, plaintiff consulted Dr. Louis Ensen-at, a general surgeon, who reported substantially the same clinical findings that Dr. Grunsten had noted. He administered ultrasonic treatments through May 1, but did not see or treat the patient thereafter.
Dr. Ensenat opined that plaintiff sustained a 20% permanent loss of wrist function, which he classified as moderate disability, and that plaintiff was disabled from doing heavy work, further stating that plaintiff would experience pain and weakness if he were to lift heavy objects.
In May, 1972 Dr. Axelrod, at defendant’s request, again examined plaintiff. The doctor found limitation of motion, specifically a 10-degree loss of dorsiflexion, and recommended resumption of physical therapy. On the basis of this examination, at which time he could not be certain-plaintiff’s condition had stabilized, Dr. Ax-elrod estimated plaintiff had a 10% to 15% disability of the wrist, but stated that this functional disability would not interfere with plaintiff’s ability to perform the type of duties he was doing when injured.
X-rays taken at Dr. Axelrod’s last examination revealed “excellent bony union with minimal resultant irregularity involving the distal articular cortex of the radius.”
Plaintiff testified that, although he did not miss a day of work from three months after the accident until the trial two years later, he suffered pain whenever he attempted any type of work and that he had to use his left hand for such minimal effort chores as pumping gas and washing cars.
The issue thus presented is whether the partial loss of function renders plaintiff totally disabled to do work of any reasonable character. An unskilled laborer who is partially incapacitated may nevertheless be totally disabled within the contemplation of the Workmen’s Compensation Act if the injury has substantially decreased his ability to complete with able-bodied workers in the flexible general labor market. Ball v. American Marine Corp., 245 La. 515, 159 So.2d 138 (1964); Olivier v. Liberty Mut. Ins. Co., 241 La. 745, 131 So.2d 50 (1961); Malone, Louisana Workmen’s Compensation Law and Practice, § 275 (1951).
In the present case plaintiff’s work record, while by no means conclusive on the total disability issue, constitutes some evidence of his ability to earn wages in an unskilled area similar to those wages he earned before the injury. However, he was still entitled to compensation for total disability if the medical evidence established he would incur substantial pain in working or would suffer a competitive dis *382 advantage in the labor market because of the injury.
Dr. Ensenat was the only physician who believed the residual effects of the injury would cause plaintiff substantial difficulty or pain in performing employment duties. In stating this opinion, he listed significant factor as limitation of motion, arthritis and presence of the ossicle, and referred to a secondary finding of atrophy. The record, however, does not support the existence of most 'of these factors..
The radiologist’s report of the May, 1972 X-rays did not mention arthritic changes, and Dr. Grunsten specifically denied these films evidenced such changes. Furthermore, Dr. Ensenat did not examine these X-rays, having seen only those taken shortly after the accident.
We further find without basis Dr. En-senat’s statement that pain and limitation of motion would be caused by the ossicle of the ulna styloid. As pointed out by Dr. Grunsten, the only orthopedic specialist presented, the mechanical interference was caused by the fracture of the radius extending to the joint between the small carpal bones of the wrist (lunate and navicu-lar) and the major bone of the forearm (radius). The comminuted fracture was not in the styloid process of the ulna. Furthermore, Dr. Grunsten stated that fractures of the styloid process of the ulna almost never cause residual symptoms.
Neither Dr. Grusten nor Dr. Axelrod observed any atrophy, nor could Dr. Ensenat detect any atrophy in examining plaintiff’s wrist and forearm in the courtroom.
The determinative question as to the sufficiency of supporting medical evidence thus becomes whether the mechanical interference at the extreme range of plaintiff’s wrist motion either is total disability in and of itself, or is a factor which would cause plaintiff substantial pain in performing employment duties.
As to pain associated with the limitation of motion itself, Dr. Grunsten significantly explained that a person rarely uses the extremes in the normal range of motion of any joint, that 99% of a person’s use of a joint is within the “functioning range” (which does not include the extremes), and that when a person’s normal range is slightly shortened, the person accommodates or compensates by using other joints, such as by using the elbow or shoulder to compensate for slightly restricted wrist motion. The doctor further stated that at plaintiff’s stage of healing, pain (except for occasional stiffness) should be minimal, and that although plaintiff would incur pain if his wrist were forced beyond its functioning range of motion, and uninjured person would likewise incur pain if his writ were forced to the extreme of his functioning range of motion; each has a pain-free range of motion available, although plaintiff’s range is slightly shorted than that of an uninjured person.
The evidence did not establish that plaintiff was required to use the extremes of his range of motion in his job either at the time of the accident or at the time of trial. See Dalson v. Hartford Ins. Group, 269 So.2d 252 (La.App. 4th Cir. 1972).
Slight loss at the extreme of the normal range of motion, furthermore, does not necessarily warrant a conclusion that a laborer suffers a substantial competitive disadvantage in the labor market so as to constitute total disability within the contemplation of the Workmen’s Compensation Act. There was no showing of substantial disadvantage in this case.
We conclude the evidence only supports a finding of permanent partial disability resulting from partial loss of function of the wrist and arm.[2]
For these reasons, the judgment of the trial court is reversed, and it is now ordered that plaintiff's suit for additional *383 compensation benefits be dismissed. All costs of this appeal are assessed to defendant.
Reversed and rendered.
PER CURIAM.

. At trial he reviewed X-rays taken in May, 1972 and found no evidence of arthritic change, a finding he characterized as minimizing the expectation that significant arthritic degeneration would result from the injury.

. It is not disputed that the compensation benefits paid exceed the maximum amount due under the schedule for permanent partial disability.