MORIAL, Judge.
Plaintiff, Lillie Mae James, appeals from a district court judgment awarding her workmen’s compensation benefits in the amount of $12.50 per week for 200 weeks.
On July 20, 1972 plaintiff injured her wrist while in the course and scope of her employment with Jake Tusa’s Restaurant. Travelers Insurance Company, Tusa’s workmen’s compensation insurer, has paid $97.-00 in medical payments and 49 weeks of *549 workmen’s compensation benefits at the rate of $41.60 per week for a total of $2,135.40.
Plaintiff alleges that as a result of her work related accident she is now totally and permanently disabled and entitled to 500 weeks of benefits at the rate of $41.60 per week, plus a credit for benefits already paid. The trial court found plaintiff to have suffered only partial permanent disability and awarded her the sum of $12.50 per week for 200 weeks, less a credit of $2,038.40 for compensation already paid. Plaintiff appeals. Defendants have answered the appeal seeking a reduction in the judgment from 200 weeks to 150 weeks at $12.50 per week subject to a credit for compensation already paid. We amend and affirm.
The sole question before us is whether plaintiff is totally and permanently disabled under the workmen’s compensation statute. Plaintiff’s counsel refers to Mrs. James an an unskilled worker. As such, her injury may entitle her to a determination of total and permanent disability if the injury has substantially decreased her ability to compete with ablebodied workers in the general labor market. Bryant v. Travelers Insurance Co., 314 So.2d 379 (La.App. 4 Cir. 1975). In addition, plaintiff will be considered totally and permanently disabled if the evidence establishes that she will incur substantial pain in the performance of her employment.
Dr. William Roy, a general surgeon, was the only witness to testify on behalf of defendant. Dr. Roy first saw plaintiff on November 3, 1972 and at that time was informed that she had fallen on July 20, 1972 and injured her right wrist. She told him that after the fall she had been taken to Charity Hospital where the wrist was reduced four times and a cast was applied which remained on for eight weeks. Dr. Roy performed X-rays which revealed a fracture of the lower end of the radius occurring approximately four months prior to his examination resulting in some limitation of motion. He encouraged the patient to use the wrist daily to its maximum capacity and expected her range of motion to increase and for her to eventually have a painless wrist. He estimated, however, that she would have about a 10% permanent partial loss of function of the wrist. He recommended that the patient start work immediately so that bone atrophy would not set in. He saw the patient one more time on July 5, 1973. This examination revealed a greatly increased range of motion and X-rays showed a complete healing of the fracture with some dorsal tilting and some shortening of the radial fragments. The doctor felt that because of this tilt she had a legitimate 10% disability of the forearm but believed she could return to her regular work — regardless of the extent of her duties — without undue discomfort. Dr. Roy further stated that he could not reconcile the amount of improvement he found on this examination with the plaintiff’s complaint that “she was unable to use her right and and could not even hold a glass of water in it.” He also felt that the patient’s complaints of swelling in the wrist each day after working were unusual a year after a fracture (but not impossible) but that if he had been called and told about the swelling he would not have advised soaking in Epsom salt (as she had done) but would have asked her to come back and see him. He admitted that although at the time of his examination he was not told that the plaintiff’s duties before the accident included those of a cook, he would still have told her to return to work in her original capacity because her range of motion had increased to a point where he felt she could do any type of work including heavy lifting.
Testimony elicited on behalf of plaintiff consisted of several lay witnesses and an employment expert. Plaintiff’s cousin, Mrs. Mildred Hodges, testified that plaintiff soaks her hand every day after work to decrease the swelling and relieve the pain. She stated that before the accident the *550 hand was normal but now plaintiff’s hand is crooked and she drops things.
Mrs. I. Robinson testified that although she did not know plaintiff before the accident she now sees plaintiff two or three times a month and has observed swelling-in her wrist. She stated that she has also seen plaintiff drop things and has been told that plaintiff cannot lift with her right hand because whatever weight comes into it causes her pain.
Mrs. Lorraine Dowell, a co-worker of plaintiff before she sustained her injury, testified that at that time plaintiff was able to perform all the functions of her job and even assisted others in the performance of their duties. She stated that now plaintiff is performing her job differently in that she or a newly hired porter now does most of the heavy lifting and plaintiff only lifts small pots. The witness stated that she has also heard plaintiff complain of pain and has seen her wrist swell.
Lillian Lee Des Lattes, qualified as an expert in the field of employment relations and the employment market, testified that after interviewing and taking a history from plaintiff she did not believe plaintiff would be employed by another employer because that employer would feel that he might be responsible for any future problems. She admitted, however, that defendant did not come to her seeking a job and that she had never actually spoken to a restaurant owner about employing a cook with a 10% disability of the wrist.
Finally, plaintiff herself testified that since she returned to her former job in December of 1974 she can no longer lift heavy pots, her wrist swells and she suffers pain. She denied that Dr. Roy had ever instructed her to return to work. She also explained that even though the pain is great she did not return to see Dr. Roy because she had suffered so much during the initial fracture that she could not bear the thought of him hurting her by possibly having to fracture the wrist again to reset it. She stated that a porter now does many of the jobs she once performed at Tusa’s and that her children now do all the housework.
After listening to all of the witnesses, the trial judge concluded that although plaintiff was not free of pain, she was not suffering substantial pain as required for total and permanent disability under the workmen’s compensation statute. He also concluded that plaintiff would not be noncompetitive in the employment market. He discounted the testimony of Ms. Des Lattes stating he was not convinced that she was knowledgeable enough to ascertain purely from what she was told by plaintiff that she would be non-competitive in the labor market.
We believe that the trial judge applied the proper standards in his determination of disability and the basis of his judgment is supported by the record taken as a whole. Plaintiff now works in the same job and in the same capacity as she did before the accident. There is nothing in the record to indicate that the porter who now assists her in her job was hired because of her present inability to perform any of her prior functions. Plaintiff’s complaints of pain and swelling, while supported by her lay witnesses, are totally unsubstantiated by the medical evidence. It is the duty of the trial judge to weigh all of the evidence, both lay and medical, in making a determination of disability. Tantillo v. Liberty Mutual Insurance Co., 315 So.2d 743 (1975). The trial judge obviously concluded that the medical testimony outweighed the lay testimony. After careful review of the record we cannot say that this conclusion is manifestly erroneous.
Having concluded that plaintiff was not totally and permanently disabled, the trial judge awarded her compensation in the amount of $12.50 per week for 200 weeks under the partial disability section of LSA-R.S. 23:1221. Plaintiff’s disability relates to her wrist and forearm, As such, plaintiff *551 is entitled to an award based upon loss of use of a hand. Bryant, supra. LSA-R.S. 23:1221 4(e) specifies compensation for ISO weeks for loss of a hand. The judgment of the trial court must, therefore, be amended to conform with this schedule.
Accordingly, the judgment of the trial court awarding plaintiff the sum of $12.50 for 200 weeks subject to credit for compensation previously paid is hereby amended and it is now ordered, adjudged and decreed that there be judgment herein awarding the plaintiff the sum of $12.50 per week for 150 weeks subject to a credit for compensation previously paid. In all other respects the judgment of the trial court is affirmed. Costs of this appeal are to be paid by plaintiff.
AMENDED AND AFFIRMED.