JONES, Judge.
This is a suit by the plaintiff, age 16 at the time of injury, for total and permanent disability benefits under the Louisiana Workmen’s Compensation Law, and for penalties and attorneys’ fees based upon arbitrary and capricious termination of benefits.
Plaintiff had been working in his employer’s machine shop for a period of five weeks when he sustained an injury to his left hand (his dominant hand) while operating a band saw. Plaintiff was holding a pipe in his left hand in the process of cutting the pipe with the saw when his hand was wedged against a bar, severely injuring the palm of the hand and cutting tendons and nerves leading to the fourth and fifth fingers. Although five separate surgical operations were performed on his hand, plaintiff cannot move his little finger which remains fixed in the form of a hook. He cannot moved the first joint of the fourth finger. There is loss of sensation in both fingers. The deep and severe cutting of the palm and nerves and formation of scar tissue at the site of these injuries causes plaintiff’s hand to be sore. The hand is particularly painful when plaintiff attempts to firmly grip any object.
The defendant paid $65 weekly compensation benefits from December 28, 1974 (date of injury) until October 24, 1975 and paid all medical expenses with the exception of $25 which it admitted owing. When defendant terminated compensation benefits counsel was employed on behalf of plaintiff and suit instituted December 15, 1975.
The trial court found plaintiff’s disability prevents him from obtaining and keeping a job. Although the trial judge recognized plaintiff’s palm injuries and impairment of the fourth finger, he felt the crooked little finger was the primary condition that created plaintiff’s total and permanent disability. The trial court held if plaintiff’s crooked little finger was amputated he could return to work and compete in the labor market. It considered the amputation of the finger minor surgery and ordered payment of benefits, conditioning the continuation of these payments upon plaintiff obtaining the amputation of the finger within a period of 30 days, with benefits to continue until he recovered from this surgery. The trial court made no award for attorneys’ fees or penalties.
On appeal plaintiff assigns as error the trial court’s conditioning the receipt of compensation benefits upon his having his finger amputated and further urged that the trial court erred in failing to award him penalties and attorneys’ fees. The defendant suspensively appealed, urging the trial court’s finding that plaintiff is totally and permanently disabled is in error for the reason plaintiff only had an 18% residual disability to his hand and was able to do the same or similar work he was doing at the time of his injury. It claims plaintiff was entitled only to benefits based upon the permanent partial disability of the hand which, when computed, reflects plaintiff has received $170 more than due. Defendant alternatively argues the trial court’s decision should be affirmed.
We affirm the trial court’s finding of disability but reverse its finding that plaintiff is required to have his finger amputated or forfeit his right to compensation. We further find defendant was arbitrary and capricious in terminating plaintiff’s com *629 pensation benefits, and is therefore liable for penalties and attorneys’ fees.
The issues presented are (1) is plaintiff totally and permanently disabled within contemplation of the Louisiana Workmen’s Compensation Law? (2) did the trial court err in requiring Jerry Wayne Upchurch to submit to surgery or forfeit his rights to workmen’s compensation benefits? (3) was defendant arbitrary and capricious in terminating compensation benefits and therefore liable for attorneys’ fees and penalties?

DISABILITY

Plaintiff is required to lift and grip the materials he works with and has pain and discomfort in his hand when he uses it in this fashion. The pain is due to the scar tissue located deep in the palm of his hand. Plaintiff also finds that he is incapable of moving his hand quickly and his crooked little finger creates a substantial handicap to him. The total loss of use in the little finger and the limitation of use of the fourth finger creates a considerable diminution in his grip as these two fingers are unable to assist his three good fingers in the gripping operation. The loss of sensation in the injured fingers also contributes to his disability.
Dr. John P. Valiulis, plaintiff’s treating physician, stated the coring out of Jerry’s palm severed the flexor tendons of the fourth and fifth fingers in two places, and even after extensive unsuccessful corrective operations there is no motion in the little finger, not even at the knuckle joint. The injury cut the nerves leading to the injured finger resulting in the little finger and top joint of the fourth finger having no feeling. The nerve endings are now located in scar tissue in the palm of the hand. The doctor stated plaintiff would have residual pain in the palm of his hand when gripping articles or objects due to these severed nerves.
When questioned about Jerry’s ability to return to work, the doctor stated that “he would have a very, very difficult time,” giving these reasons: he has no flexion in the fourth and fifth fingers, and therefore these fingers give no help in grasping or lifting; he cannot moved his hand as quickly — “Now he has an unagile hand”, which might make the hand prone to further injury; his hooked little finger is likely to catch on things, and otherwise get in the way; the loss of feeling in the ends of the injured fingers could cause him to burn or otherwise injure himself without realizing the danger. He also testified that pulling or pushing on the hooked little finger could cause considerable pain. The doctor said Jerry’s injury was a permanent condition and, in his opinion, would keep him from being able to competitively engage in manual labor. He would not recommend Jerry’s return to his old job, and thinks Jerry would have trouble obtaining employment because of most employers’ reluctance to assume the risk of further injury.
When examined about an earlier report on which he gave Jerry an 18% permanent partial disability of the hand, the doctor explained that rating as “purely based on the number of the. contracture and motion of the fourth and fifth fingers, and that is based on a form we get from compensation. We just go by that form strictly. It has got [sic] no consideration of anything but purely function, motion of the fingers.” When asked about the relation of this rating and Jerry’s ability to work, the doctor replied, “ * * * We are not talking about any relation to his job or anything like that. We don’t even think about that. Just looking at the numbers and plugging in the formula.” Dr. Valiulis is a plastic surgeon, trained in cosmetic hand surgery and general plastic surgery, and Board certified by the American Board of Plastic Reconstructive Surgery.
The only other witnesses who expressed opinions with regard to plaintiff’s disability were employees of the machine shop. One co-worker expressed the belief plaintiff could return to work. However, he admitted a person with two hands could function much better in a machine shop than a person with use of only one hand, and further acknowledged that he was incapable of making any statement with regard to whether or not plaintiff would endure any *630 pain in the performance of his job. One of plaintiff’s supervisors testified he believed plaintiff could return to his job. He based his evaluation upon having observed plaintiff’s hand as plaintiff occasionally walked through the machine shop following his injury. He likewise acknowledged he could make no evaluation concerning the pain plaintiff might endure attempting to perform his work.
A secretary for defendant testified she had seen Jerry working on a car, a motorcycle and handling Rung Fu sticks as she passed the neighborhood where Jerry lived. Jerry denied actually working on his car and motorcycle; however he admitted handing tools to a friend who worked on these vehicles. Jerry acknowledges taking Rung Fu lessons. Defendant urges that this activity indicates an absence of disability on the part of plaintiff. Jerry testified he wears a padded glove on his left hand and never strikes anyone with it. He states these training activities 0are conducted between the parties without actual delivery of blows.
We find the testimony of plaintiff’s coworkers unimpressive when compared with the positive testimony of plaintiff’s treating physician, a well qualified plastic surgeon who actively examined and treated plaintiff for approximately one year following his injury and who has performed five separate surgical procedures upon plaintiff’s hand.
An employee is considered totally and permanently disabled if the evidence establishes that he will incur substantial pain in the performance of his employment. He is also totally and permanently disabled if the injury has substantially decreased his ability to compete with able-bodied workers in the general labor market. James v. Jake Tusa’s Restaurant and Bar, 332 So.2d 548 (La.App., 4th Cir. 1976); Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138 (1963); Washington v. Independent Ice and Cold Storage Company, 211 La. 690, 30 So.2d 758 (1947).
The trial judge’s finding that Jerry is unable to obtain or keep a job competitively in the manual labor market is a holding that Jerry’s disability renders him totally and permanently disabled. The evidence clearly supports this finding.

SURGERY

Bituminous urges if Jerry’s injury is held to constitute total and permanent disability then the evidence establishes the amputation of Jerry’s hooked little finger will relieve his disability and enable him to return to work.
The jurisprudence has established the equitable doctrine that, while an employee cannot be forced to submit to surgery, his compensation benefits may be withheld or suspended when he unreasonably refuses to submit to simple surgery which will remove his disability. Bass v. Service Pipe Trucking Company, Inc., 289 So.2d 78 (La.1974). The criteria used in rendering such an order are stated in Bass as follows:
“1. Can it be reasonably assumed that the operation will relieve the situation and permit the claimant to resume the type of work he was performing at the time of the accident?
“2. Will the operation submit the claimant to a minimum of danger and be in no sense dangerous to his life or be attended by no unusual risks and is it attended with but slight pain?
“3. Is there no serious disagreement among the surgeons as to the necessity for the operation or the type of operation to be performed, and the probability that the disability will be cured without recurrence?” Id. pages 80, 81.
The corrective surgery sometimes required by the jurisprudence as a condition of continuing to receive compensation has included the amputation of a portion of a finger. In Hamilton v. New Amsterdam Casualty Company, 208 So.2d 158 (La.App., 4th Cir. 1968), the court ordered the claimant to submit to an amputation of the tip of his index finger or forfeit his benefits. There the court pointed out:
“ * * * In the instant case there is no disagreement among physicians as to the *631 necessity of the operation as only Dr. Aecardo testified concerning it, thus fulfilling the third test.” Id. p. 162.
In LeDay v. Lake Charles Pipe and Supply Company, 185 So. 655 (La.App., 1st Cir. 1939), the court in evaluating medical evidence and ordering a second amputation between the first and third joints of plaintiff’s index finger, stated as follows:
“ * * * [T]he medical testimony is almost unanimously to the effect that disability would be entirely relieved by the operation.” Id. page 657.
The only doctor who testified in these proceedings is plaintiff’s treating physician. He did not recommend the amputation of plaintiff’s finger, and further testified he could not state that removal would eliminate plaintiff’s disability. He stated he would not amputate at this time because of Jerry’s age, social and psychological ramifications, and because “. . . he (the doctor) didn’t know what the future would hold.” He stated that amputation would not “better” Jerry’s condition and is not a “cure” but would merely remove the problem of the finger being in the way. When asked if amputation would improve Jerry’s ability to do tasks, Dr. Valiulis replied, “It might. I don’t know. I really don’t know.”
The only other medical evidence in the record is a short letter written by Dr. Sim-eon P. Wall, Dr. Valiulis’ partner, who only examined Jerry one time for the purpose of evaluating him. The evidence reflects he had seen plaintiff several times while making hospital rounds as a courtesy to plaintiff’s treating physician, but that on these occasions his principal function was to be certain Jerry was comfortable and to check his chart. Dr. Wall’s letter stated:
“My recommendations are that the patient either undergo a fusion of the left little finger in a more anatomical position or to undergo an amputation of the left little finger. His permanent disability closely approximates 15% to 20% of total hand disability.”
This letter made no comment on the ability of plaintiff to return to his former employment following this surgery.
The record in this case is barren of an opinion by a physician to the effect that removal of plaintiff’s little finger would eliminate disability. The only physician who testified did not recommend surgery. An amputation of plaintiff’s little finger is not justified under the criteria as expressed in Bass, supra, and thus the trial court erred in requiring Jerry Upchurch to undergo amputation as a condition to receiving further compensation payments.

PENALTIES AND ATTORNEYS’ FEES

A workmen’s compensation carrier’s ex parte termination of benefits without a showing of probable cause for such termination is considered arbitrary and capricious. Bituminous has not introduced any medical reports or other evidence which would have lead it to believe that plaintiff’s disability terminated on October 24, 1975 nor has it otherwise shown good cause to justify its termination of plaintiff’s benefits on that date. See Morgan v. Lumbermen’s Mutual Casualty Company, 317 So.2d 7 (La. App., 1st Cir. 1975).
The employer’s secretary testified plaintiff called her on Friday, October 24, 1975 and advised her the doctor had dismissed him and he would return to work Monday. He did not return to work Monday, October 27 and instead his attorney called inquiring the name of the employer’s workmen’s compensation insurer. There was testimony by a co-worker and supervisor that they believed Jerry could resume his work at Machine Products.
Neither plaintiff’s telephone call to the secretary, immediately negated by his attorney, nor the testimony of plaintiff’s co-worker and supervisor would have been sufficient evidence to constitute a justifiable termination of benefits. The only other evidence in the record was an indication that the insurer may have had a report from plaintiff’s doctor reflecting 18% disability to his hand. The reference to this report does not show that plaintiff’s disability had terminated on October 24, 1975. There is no indication in the record that *632 defendant had available to it the opinion of plaintiff’s co-worker, his supervisor, or the medical report as of the date it terminated plaintiff’s benefits. It is incumbent upon the insurer to make a reasonable effort to ascertain plaintiff’s exact condition at the time compensation benefits are terminated. Williams v. Liberty Mutual Insurance Company, 327 So.2d 462 (La.App., 3d Cir. 1976).
Defendant was arbitrary and capricious in terminating plaintiff’s compensation benefits and therefore is liable for penalties and attorneys’ fees. An examination of the record shows a reasonable attorney fee is $1500.
The expert witness fee of plaintiff’s doctor who gave his deposition is assessed as court costs. Since the lower court did not set the expert witness fee, we set it at $150, taking into account the comprehensive nature of the deposition, and that deponent is a highly qualified specialist.
For the foregoing reasons, we modify the judgment of the trial court and find plaintiff totally and permanently disabled and order defendant, Bituminous Casualty Corporation (erroneously referred to in plaintiff’s petition as Bituminous Insurance Company) to pay Jerry Wayne Upchurch Workmen’s Compensation benefits of $65 per week from December 27, 1974, and to continue for a period not to exceed 500 weeks, less payments already made, along with legal interest and 12% penalties on any payment overdue, together with $1500 attorneys’ fees and the unpaid medical bill in the amount of $25. Bituminous Casualty Corporation is to pay all costs of these proceedings, including this appeal.