STOKER, Judge.
Plaintiff, Charles St. Romain, sued defendant, Insurance Company of North America, to recover workers’ compensation benefits and penalties and attorney’s fees. Plaintiff appeals the judgment which *793 granted him benefits but denied him penalties and attorney’s fees.
The sole issue on appeal is: Whether the defendant acted arbitrarily, capriciously or without probable cause in failing to pay plaintiff workers’ compensation benefits so as to be subject to penalties and attorney’s fees under LSA-R.S. 22:65s.[1]
At trial the plaintiff and defendant entered into the following stipulations:
“1. It is jointly stipulated that Mr. Charles St. Romain, plaintiff herein, was injured during the course and scope of his employment with Harry Hebert Homes on Oct. 17, 1979;
2. It is jointly stipulated that the plaintiff is totally disabled as of the date of this trial;
3. It is jointly stipulated that at all times pertinent herein that the defendant-insurer had insured plaintiff under a standard form workmen’s compensation policy covering Mr. St. Romain for the on-the-job injuries sued upon herein; and,
4. It is jointly stipulated that claimant is entitled to the maximum compensation rate allowed by law.” Tr. 23
The record reveals that plaintiff retained counsel to represent him in his claim for compensation on October 21, 1979. In a letter dated October 22, 1979, counsel notified Nugier Insurance Company and the agent who sold the compensation policy of plaintiff’s on the job injury and made demand for the commencement of compensation payments to plaintiff. See Plaintiff’s Exhibit 8. During the second week of December, counsel for plaintiff received a check for $1,036.00 representing compensation due plaintiff for the period of October 17,1979, through December 6, 1979. Counsel received a second check in the latter part of December representing compensation due plaintiff for the period of December 6,1979, through December 20,1979. On January 4, 1980, plaintiff’s counsel contacted defendant’s adjustor and informed him that plaintiff had not received compensation subsequent to December 20,1979. In a letter dated January 8, 1980, defendant’s adjustor assured counsel that plaintiff’s benefits would be brought up to date immediately. See Plaintiff’s Exhibit 9. This was not done and plaintiff filed suit on January 10, 1980.
The record is deficient as to the exact amount of compensation paid to plaintiff by defendant. We glean from the record that plaintiff received only one compensation check subsequent to December 20,1979, and this was in late February or early March of 1980. Plaintiff received no compensation .from that time until trial of this matter on September 12, 1980.
On cross examination of the plaintiff counsel for defendant attempted to elicit from plaintiff an admission that he received checks for compensation consistently from December 20, 1979, to March 3, 1980. Plaintiff denied receiving payments on a consistent basis during this period. Plaintiff admitted that he possibly received one check for $296.00 in late February or early March. See Tr. 68. At trial defendant offered no proof that plaintiff received *794 compensation payments for the period of December 20, 1979, to March 3, 1980. Defendant did not offer into evidence the endorsed or cancelled compensation checks as proof that such benefits were paid by defendant and received by plaintiff; nor did defendant offer any proof that it paid benefits to plaintiff subsequent to March 3, 1980.
In the case before us defendant did not file a brief on appeal urging any reasons for its failure to pay benefits; nor did defendant at trial offer any testimony to justify its termination of benefits. A workers’ compensation carriers’ termination of benefits without a showing of probable cause for such termination is arbitrary and capricious and subjects the carrier to liability for penalties and attorney’s fees. Upchurch v. Bituminous Insurance Company, 340 So.2d 627 (La.App. 2nd Cir. 1976), writ refused, 342 So.2d 871 (La.1977). Defendant has not shown probable cause for its termination of benefits.
We have carefully examined the record in an attempt to determine why defendant terminated benefits. The record reveals that following plaintiff’s injury he underwent surgery on December 4, 1979, to remove a ruptured disc. Dr. Thomas B. Flynn,[2] a neurosurgeon, performed the operation. Dr. Flynn saw plaintiff on four occasions following the operation for postoperative care. Dr. Flynn released plaintiff to return to work after the visit on March 17, 1980. See Flynn Exhibit 2. It is not clear from the record when the defendant received a report from Dr. Flynn stating that plaintiff could return to work. Defendant did not suggest at trial that it relied on Dr. Flynn’s report in terminating benefits. In fact defendant terminated benefits weeks prior to the time that Dr. Flynn released plaintiff to return to work.
Assuming that defendant relied on Dr. Flynn’s report to justify its failure to pay benefits subsequent to March 17, 1980, we find that as of mid-April 1980, defendant was on notice that there was a conflict in the medical reports rendered on plaintiff’s condition. This conflict became known to defendant after counsel for plaintiff in a letter dated April 8, 1980, forwarded to defendant’s adjustor the medical report of Dr. Thomas Kennon. Dr. Kennon, an or-thopaedic surgeon, examined plaintiff on April 1, 1980, and reported that plaintiff was totally and completely disabled from performing any activities requiring bending or lifting with his back. Upon receipt of Dr. Kennon’s report it was incumbent upon the defendant to make a reasonable effort to ascertain plaintiff’s exact condition. The record in this case is devoid of evidence as to such an inquiry. The defendant was arbitrary and capricious in failing to make such an inquiry.
On September 4, 1980, defendant deposed Dr. Thomas B. Flynn for a second time. During this deposition Dr. Flynn stated that he examined plaintiff on September 2, 1980, and found him at that time to be suffering from a fixed pain syndrome requiring psychiatric counseling before he could return to work. Certainly at this point defendant was arbitrary and capricious in not resuming, and bringing up to date, payment of weekly compensation benefits to plaintiff.
We find that the defendant-insurer acted without probable cause in failing to consistently pay benefits to plaintiff after December 20, 1979. Additionally, we find that the defendant was arbitrary and capricious in terminating benefits in early March, 1980. So finding, defendant is liable for penalties and attorney’s fees in accord with LSA-R.S. 22:658.
In determining the amount of attorney’s fees to be awarded, the relevant factors include the degree of skill of the attorney and the volume of work performed by him in prosecution of the claim. Considering these factors we award attorney’s fees of $3,000.00.
*795 For the above and foregoing reasons the judgment of the trial court is affirmed insofar as it declares plaintiff to be totally and permanently disabled. The judgment is reversed insofar as it denies plaintiff recovery of statutory penalties and attorney’s fees against defendant, Insurance Company of North America. It is hereby ordered that there be judgment in favor of plaintiff and against defendant in the amount of $3,000.00 for attorney’s fees plus 12% penalties on all weekly benefits which became due from and after December 20, 1979.[3] Costs of this appeal are assessed to defendant.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

. LSA-R.S. 22:658 provides as follows:
All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney’s fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney’s fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney’s fees.

. Plaintiff received initial conservative treatment following the injury from Dr. John E. Lemoine on October 22, 1979. On October 31, 1979, Dr. F. C. McMains, an orthopaedist, examined plaintiff. Dr. McMains issued a report on November 5, 1979, stating that plaintiff possibly had an early ruptured intervertebral disc. Dr. McMains referred plaintiff to Dr. Flynn.

. Plaintiff admitted payment of compensation through December 20, 1979. Plaintiff also admitted the possibility that he received one compensation check at some time within the next month or so. The trial court made no finding of the total amount of compensation paid or the date through which compensation was paid. The reasons for judgment and judgment simply provided for payment of weekly compensation for total and permanent disability “from October 17, 1979, with credit for sums already paid...”. As we have noted the record does not clearly establish whether any payments were actually paid for the period after December 20, 1979. If any payments were made after December 20, 1979, nothing in the record establishes when such payments were made to plaintiff. Under the circumstances we have provided December 20, 1979, as the date from which the penalty provision shall apply.