BOUTALL, Judge.
This suit involves a claim for total and permanent disability under the Occupational Disease section of our workmen’s compensation law, LSA R.S. 23:1031.1. After trial on the merits plaintiff, Buster Chivo-letto, was awarded $49.00 a week not to exceed 100 weeks for loss of a bodily function. Defendant, Johns-Manville, has appealed that judgment assigning as error the fact that the trial court did not make a finding of factual disability. Plaintiff has also appealed contending that the trial court erred in not granting a total and permanent disability award and in not granting the statutory penalties and attorney’s fees. On appeal defendant has filed an exception of prescription.
The facts of this case are best summarized in the trial court’s Reasons for Judgment :
“Plaintiff, Buster J. Chivoletto was employed by Johns-Manville Products Corporation, the defendant, for approximately 22 years. Johns-Manville is in the business of making asbestos products. During his 22 years in defendant’s employ, the plaintiff was exposed to varying degrees of asbestos and silica particles, particularly during the latter stages of his work as a lathe operator. His duties consisted of cutting and shaping asbestos pipe with power equipment, a procedure which filled the air with asbestos fiber.
“In 1970, while plaintiff was satisfactorily performing his duties without undue discomfort or pain, the plant in which he worked was closed down for economic reasons. The plaintiff and many others found themselves unemployed.
“The plaintiff subsequently found work with Hydril, Inc. as a laborer. He left there to work at Hunt-Wesson Foods at a higher rate of pay, again as a laborer. Finally, he obtained a job with the Parish of Jefferson as a sewerage plant operator, a semi-skilled position at which he is presently working at a higher rate of pay than he earned at Johns-Manville. His past and present employers have nothing but praise for his work. He experienced shortness of breath when his work became strenuous but attributed it to ‘growing old’ and nevertheless managed to perform his duties satisfactorily. He was not made aware that he had contracted asbestosis until March, 1973.
“The bulk of the testimony in this trial concerned the medical evaluation of the plaintiff’s physical condition. Dr. Hans Weil, professor of medicine at Tulane University and a specialist on occupational diseases, and Dr. Morton Brown, the treating physician and a specialist on lung diseases, each testified for approximately four hours. The deposition of Dr. Hurst Hatch of Ochsner Foundation Hospital was introduced in lieu of his testimony.
“All three doctors agreed that the fine, hair-thin lines that were apparent in EPA (Erect, Posterior-Anterior) x-rays of the plaintiff’s chest and lungs were characteristic of interstitial fibrosis. Interstitial fibrosis is a scarring of the lungs. In cases of asbestosis, microscopic bits of asbestos fiber are inhaled into the deepest recesses of the lungs and entrapped. The body reacts to this foreign substance by creating scar tissue around the asbestos particles, and this scar tissue eventually reduces lung efficiency and creates shortness of breath. This scar tissue is visible on x-rays as a fine line. Drs. Weil and Hatch stated that a positive diagnosis that the lines actually *494 were interstitial fibrosis could only be made after a biopsy had been performed on the lung tissue. Dr. Brown stated that there was no doubt in his mind that interstitial fibrosis was present, given the plaintiff’s occupational background.
“All nails in plaintiff’s upper extremities were clubbed. Clubbing is a condition in which the nails arch upward at the base. It is a sign of asbestosis as well as other diseases. The plaintiff also suffers from an acute hyperventilation syndrome, which is compatible with asbestosis as well as other causes.
“All of the doctors agreed that plaintiff’s condition was abnormal. The defendant’s doctors, Weil and Hatch, attempted to show that the plaintiff’s condition could possibly have been caused by something other than asbestosis, but did not offer any suggestions as to what that cause might be. Neither confirmed that the plaintiff was suffering from asbestosis, nor did either deny the possibility. Dr. Weil himself stated that, given the plaintiff’s x-rays and medical history of exposure to asbestos dust he would make ‘a presumptive diagnosis of asbestosis’.
“Dr. Brown was insistent that plaintiff had contracted asbestosis as a result of his work with Johns-Manville. He stated that there was ‘no doubt whatsoever’ in his mind. This Court agrees with the conclusion of Dr. Brown for two primary reasons. First, Dr. Brown was the treating physician of the plaintiff and as such, was able to give a more detailed examination and to observe the plaintiff at greater length. Secondly, and more importantly, Dr. Brown had access to two ‘oblique view’ x-rays of plaintiff’s lungs which demonstrate conclusively, in the opinion of this Court, that plaintiff has asbestosis.
“All three doctors are eminently qualified. Their achievements form a part of the record, and are, to say the least, impressive. But Dr. Weil had never examined the plaintiff before or even met him personally. His diagnosis was based on a study taken of some 900 Johns-Manville plant workers in 1970, of which he was the director. The pulmonary function studies which he relied upon were taken almost four years ago, and it was stated that asbestosis is often a progressively worsening disease. Dr. Hatch examined the plaintiff twice, once in 1973 and again in 1974, and his results were inconclusive. But not once did either Dr. Weil or Dr. Harch deny the possibility that plaintiff had asbestosis and their testimony, taken as a whole, practically admits the probability of asbestosis.
“Dr. Brown has been plaintiff’s treating physician since March 2, 1973 when he first saw him at the request of his family physician. He ordered plaintiff hospitalized the next day, during which four-day period of hospitalization he had oblique-angle x-rays of the lungs taken.
“According to Dr. Brown, an oblique-angle view enables one to better see the fine lines that are characteristic of interstitial fibrosis on the edges and surfaces of the lungs. When fibrosis is present, the scarring in effect pushes the lung away from the rib cage, and the thickened ‘pleural line’ can be plainly seen on an oblique-angle x-ray.
“This pleural line was plainly visible on the x-rays of the plaintiff which were introduced into evidence. Dr. Brown stated that sometimes this is the only true sign of asbestosis, that it is an extremely reliable sign, and that he would be hard pressed to find another explanation for the appearance of such a sign. The only other cause that he could think of was a rare case of bilateral pneumonia, which is inconsistent with the plaintiff’s medical history.”
We agree with the finding of the trial judge that plaintiff had contracted asbestosis and that this condition was caused by his employment at Johns-Manville as a result of the nature of the work performed. Asbestosis is one of the listed occupation diseases for which a workman *495 may recover. R.S. 23:1031.1. We now turn our attention to the issues of prescription and the extent of disability.
The facts of this case plainly invalidate defendant’s exception of prescription. LSA R.S. 23:1031.1 (D) reads as follows:
“D. All claims for disablement arising from an occupational disease are forever barred unless the employee files a claim with his employer within four months of the date of his contraction of the disease or within four months of the date that the disease first manifested itself. Notice filed with the compensation insurer of such employer shall constitute a claim as required herein.”
The facts and jurisprudence make it clear that a disease such as asbestosis does not manifest itself until the claimant becomes aware that he has contracted the disease. Mr. Chivoletto was sent to Dr. Brown in March of 1973 and it was not until after the x-rays of that visit were taken that Chivoletto was informed that he had asbestosis. Suit was filed in May of 1973 clearly within the four month period set out in the statute.
We next turn to Johns-Manville’s contention that the trial court erred on the issue of Mr. Chivoletto’s disability. Defendant contends that Chivoletto is presently working in a semi-skilled job and is able to carry out all the duties of his employment, therefore, he is not factually disabled, which is requirement of the Occupational Disease Act. Plaintiff presents the more appealing argument. While it is true that Chivoletto has a job and fulfills its duties, the evidence shows that he must work in some degree of pain, due to his shortness of breath. He lives in fear that he will no longer be able to work due to his lung condition. This fact was pointed up when Mr. Chivoletto testified that he continues to work because he feels he is forced to in order to eat and live.
Johns-Manville points out that the above facts do not characterize “disability” within any of the commonly accepted definitions of that term. It further points out that the trial court found that Mr. Chivo-letto was not disabled. We agree that such a finding was made, however, we feel that it was made in relation to plaintiff’s claim for total and permanent disability benfits. We agree that plaintiff is not entitled to total and permanent disability benefits because he is factually not disabled to that extent. We find that plaintiff has lost the full function of his lungs, thus handicapping him in the pursuit of employment in the flexible labor market. Charleston v. Veri-Fresh Poultry Company, Inc., 273 So.2d 712 (La.App. 1st Cir. 1972).
This disability stems from the fact that all three experts agreed that plaintiff could not return to the Johns-Manville plant, were it still operating. He is further handicapped in that he cannot accept any employment which would expose him to asbestos dust or other agents causing pneu-moconiosis.
This court is always mindful of the fact that the purpose of the workmen’s compensation law is to provide injured workers with a means of support and reparation for their injuries. And because the Act is a compromise between industry and labor our courts have given it a liberal construction to better effectuate its purpose. Danielsen v. Security Van Lines, Inc., 245 La. 450, 158 So.2d 609 (1964); Compton v. North River Insurance Co., 281 So.2d 848 (La.App. 1st Cir. 1973).
Plaintiff’s plea for penalties and attorney’s fees under the provisions of LSA R.S. 23:1201.2 were rejected by the trial court and we affirm. Although the facts were clear to all that Mr. Chivoletto has asbestosis it was not clear that he was suffering a disability. We affirm the trial court’s decision that defendant did not act in an arbitrary and capricious manner in refusing plaintiff benefits.
For the foregoing reasons we affirm the judgment of the trial court. Defendant, Johns-Manville Products Corporation, is to pay all costs.

Affirmed.

*496 BEER, Judge (concurs).
I concur in the affirmation of the judgment. However, I do not agree that Plaintiff-Appellee Buster Jos. Chivoletto is working in some degree of pain as stated in the majority opinion.
Though I would have concluded otherwise, I find no manifest error in the conclusion of the trial judge that Mr. Chivo-letto contracted asbestosis as a result of his work with Johns-Manville.
I agree that Mr. Chivoletto has experienced some loss of lung function but do not believe that the extent of this loss materially affects his way of life in any important respect. I agree that it is proper to recognize this loss of physical function in some amount, assuming it to be employment connected. Making this assumption, I would be inclined to award $25.00 per week for 100 weeks.
However, I do not believe that the trial judge’s award of $49.00 per week for 100 weeks is manifestly erroneous. Thus, I concur.