SCHOTT, Judge.
Plaintiff’s employer and its workman’s compensation insurer have appealed from a judgment awarding him benefits for total and permanent disability because of his contraction of the occupational disease, asbestosis and/or pneumoconiosis pursuant to LSA-R.S. 23:1031.1.
Plaintiff’s job consisted of breaking up blocks of asbestos and feeding it into a grinder. This operation naturally caused asbestos particles to be present in the atmosphere in which plaintiff was working. That this condition was recognized by the employer is best demonstrated by the fact that plaintiff was provided with a mask to use in his work and the company required plaintiff to submit to an annual X-ray examination presumably for the purpose of detecting signs of asbestosis in his lungs.
After working for defendant from 1965 until 1973, plaintiff was advised that the routine X-ray taken on January 17, 1973, showed a “spot” on his lungs and that he should see his personal physician in connection therewith. He consulted Dr. Albert James Bloom in April and was placed in the hospital for tests by Dr. Bloom from April 3 to April 8,1973. When plaintiff was admitted to the hospital on this occasion, Dr. Bloom gave as his clinical findings: Chronic cough, considerable expectoration and the routine X-ray positive for infiltration of the lungs. After this hospitalization, Dr. Bloom diagnosed acute tracheo bronchitis compensated hypertensive cardiovascular disease and myocardial eschemia. He prescribed antibiotics, cough mix, sedation and bed rest.
Beginning in February, 1973, plaintiff had missed five or six weeks of work and apparently returned to work shortly after his discharge from this first hospitalization in April. At this point in time plaintiff had consulted an attorney[1] in order to collect compensation benefits for this six weeks’ period. In the meantime, this previous attorney had referred plaintiff to Dr. Morton Ziskind, an expert in the field of pulmonary disease. Dr. Ziskind examined plaintiff on March 26, 1973, and his report to the previous attorney, dated April 24, contains the following pertinent data: Plaintiff has complained of chronic cough for over one year, he has frequent chest colds, takes cough medicine and has chest soreness associated with coughing. He has no difficulty in walking three blocks. On the basis of his examination of plaintiff, which included X-rays taken on March 20, and pulmonary function studies he diagnosed chronic obstructive pulmonary disease with a mild obstructive disorder, coarse linear infiltrates at the left lung base of unknown etiology and hypertensive cardiovascular disease. The X-ray changes noted did not appear specific for pneumoconiosis. He had arterial hypertension with enlarged heart. His report included the following: “All of these changes [X-ray and pulmonary function] are not specific and could occur with different combinations of chronic obstructive pulmonary disease. The duration of exposure to asbestos, which is seven to eight years, is rarely associated with roent-genographic or physiologic functional evidence of asbestosis. The possibility that early reaction following exposure to the dust has aggravated his cardiac and obstructive pulmonary disease ■ can be considered.”
The routine X-ray taken on January 17, 1973, at the behest of plaintiff’s employer was done locally and forwarded on the company’s instruction to its national physician in Cleveland, Ohio. This physician, Dr. George Wright, had made the following interpretation of the X-ray:
“The right and left costo-phrenic angles are slightly blunted and there are several horizontal linear densities just above the left diaphragm. Films as far back as ’65 show this has been developing gradually and suggests slight thickening of the pleura plus sub-segmental atelectasis on the left.”
*741 When the company received this report from its physician it referred plaintiff to its own local physician, Dr. T. S. Dunn, -Jr. He reported on April 24 that he reviewed the interpretation of Dr. Wright and the report of Dr. Bloom, based on his treatment of the plaintiff at the hospital. In his opinion, Dr. Bloom’s diagnosis of chronic tracheobron-chitis was “certainly a very non-specific one and refers to some chronic irritative or'inflammatory process with no etiology specified.” Dr. Dunn was impressed by the diagnosis of cardiovascular disease and felt that Dr. Bloom did not regard this diagnosis as occupational in nature. Dr. Dunn expressed some dissatisfaction with Dr. Wright’s report to the effect that it was somewhat vague, and he advised the company to ask Dr. Wright directly whether or not the changes he saw in the X-rays were on the basis of an occupational pneumoconi-osis. Dr. Dunn had his own X-ray report taken on April 3 and his radiologist, Dr. Haley, stated that there was no evidence of pleuropulmonary pathology.
It was on the basis of these reports that plaintiff and defendants on November 7, 1973, filed a joint petition for approval of a compromise wherein it was alleged by plaintiff that he had contracted an occupational disease while in the course and scope of defendant’s employment, and defendants alleged that the disease was not contracted, or if it was, that there was no causal connection with his employment and he suffered no permanent injury, reciting that a dispute existed between the parties regarding the claim. They submitted for approval a compromise of $606. The receipt and release given by plaintiff to defendants in connection with this compromise recited that he was releasing defendants from any and all further claims for “disabilities which may exist but which are at this time unknown wholly or in part and which may develop or become known in the future. . "
Plaintiff worked for defendant continuously until March, 1975. In the meantime on February 21,1975, another routine chest X-ray had been taken in New Orleans, and sent to Dr. Wright now in Colorado but. still the national physician for defendant, and he made the following interpretation of the X-ray:
“There is slight thickening of the pleura visible along the lateral chest wall on both sides and the costo-phrenic angles are blunted. Because of the inside ‘haze’ produced by the thickened pleura, the underlying lung cannot be seen clearly. Even so there are small irregular densities contributing to the partially obscured broncho vascular markings, especially at the left base.
“The overall appearance suggests a minimal stage of pneumoconiosis, most likely due to asbestos. It should also be noted that the cardiac silhouette is abnormally broad, indicating cardiac enlargement.”
Dr. Wright’s report indicated to the company that it should consult its physician and follow his advice. On March 24 a company physician advised it that plaintiff should be referred to his private physician for further evaluation. Shortly thereafter, plaintiff returned to Dr. Bloom who hospitalized him for tests on May 6, 1975.
When plaintiff was admitted to the hospital, Dr. Bloom reported that the patient had been fairly well until he developed pain in his chest four months previously. This was accompanied by shortness of breath even without exertion. Dr. Bloom classified him as a “Hypertensive Cardiovascular Disease individual who also has Asbestosis.” Upon being discharged from the hospital on May 12, Dr. Bloom made a final diagnosis of asbestosis along with the cardiovascular disease and angina pectoris.
On June 12, 1975, Dr. Dunn made a report to defendants concerning his examination of plaintiff made on June 11. After noting that plaintiff had arteriosclerosis and hypertension they concluded:
. . There is certainly a reduced pulmonary function and a somewhat abnormal chest X-ray, so I am reluctant on the basis of the findings noted to my non-radiologic eye to make a diagnosis of asbestosis. I would, of course, be delighted to know the interpretation of films *742 taken in our office in 1974 and forward it as well as those obtained this year in New Orleans. It might be well to have all of these films compared by the original consultant selected by National Gypsum who, I am informed, has nationally recognized expertise in the diagnosis of asbestosis. There certainly is a significant past smoking history, but a lung biopsy may be necessary to make a definite diagnosis in this particular case. Certainly his ostoarthritis and cardiovascular problems have become limiting but these are not occupational. I believe all these films will have to be reviewed by an expert in the field who may or may not be able to give a final opinion. In the absence of such, lung biopsy would be necessary to establish an occupational disease.”
This suit was filed by plaintiff on July 2, 1975, and it was met with exceptions of prescription and res judicata based upon the judicial compromise of plaintiff’s claim in November, 1973. The exception was referred to the merits and the trial of the case consisted principally of the testimony of plaintiff, and introduction of depositions of Dr. Bloom, Dr. Ziskind and Dr. Thomas Oelsner along with the various reports which have already been discussed.
Dr. Bloom testified as follows: He had made a diagnosis of pneumoconiosis of the lung due to asbestosis and advised plaintiff to see him monthly for his condition. Plaintiff came fairly regularly in 1973 and he saw plaintiff occasionally in 1974 when he was complaining of colds, arthritis or conditions related to his heart. In 1974 the only specific complaints made by plaintiff referable to his lungs were coughing and chest pain for which he was given antibiotics. Discussing the X-rays taken during plaintiff’s hospitalizations in 1973 and 1975, these showed some improvement in that the individual lymph nodes had calcification in each one, indicating that the body had healed to a reasonable degree. Nevertheless, plaintiff’s condition had to be worse because of continued ingestion of asbestos fibers. The antibiotics had resolved the inflammatory process of the infection in the lung and in the nodes with the result that the condition seemed improved on the X-rays, but the fibers were there permanently. He concluded that plaintiff’s condition was aggravated. He recommended hospitalization and regular treatment for plaintiff but he could not afford this. In his opinion, plaintiff’s asbestosis aggravated his heart condition. He described the symptoms of pneumoconiosis as thickening of the pleura, fibrosis of the lungs and inflammation of the lymph nodes, all of which plaintiff demonstrated, but he said in the final analysis the-diagnosis of asbestosis is clinical in that the diagnostician must know that the patient has been exposed to asbestos before he can diagnose the disease. In his opinion, one does not have to be exposed to asbestos for 20 years in order to become disabled since it depends on the amount of asbestos which gets into the lungs, the individual’s resistance and how he reacts to it. In his opinion, plaintiff was unable to work and his disability was caused by a number of things which individually might disable him but together all contributed, namely, his heart condition, his arteriosclerosis and his asbestosis.
Dr. Ziskind testified concerning the diagnosis of asbestosis at different stages of the disease as follows: In the first place there must be a showing that the patient has been exposed to asbestos. In the early stages of the disease chest X-rays would show extra fine densities in the lungs, usually in the lower portion, and functional tests would show a reduction in the vital capacity of the lungs. In the later stages, pulmonary diffusion capacity would drop and blood studies would show a drop in oxygen retention following exercise. In the more advanced stages, the patient would have rales in the lungs, clubbing of the fingers and shortness of breath. The first signs of the disease would be detected on an X-ray by comparison with films taken over a period of time. Development of the disease to the extent that signs will be visible on X-ray is not likely to occur until the end of the second decade of exposure to asbestos, but this could vary depending on conditions at the plant where the individual worked.
*743 Dr. Ziskind discussed and compared plaintiff’s chest X-rays taken between 1965 and 1975 as follows: The streaks appearing in the films of 1972 and later resulted from technical problems in taking the X-rays. A film taken in October, 1973, showed the enlarged heart, streaks and fine nodules at the base which would be consistent with some disease, such as pneumoconiosis, but the disease would not be disabling on the basis of this appearance. Abnormalities shown on the March, 1973, X-ray taken by him were consistent with inflammatory disease and showed that plaintiff had some previous disease of the lungs with evidence of emphysema. The February, 1975, X-ray did not lead to a diagnosis of asbestos disease of the lungs but there were pleural changes consistent with asbestos related disease. In this respect, Dr. Ziskind took issue directly with Dr. Wright’s report that this February, 1975, X-ray suggested a minimal stage of pneumoconiosis most likely due to asbestos. Dr. Ziskind stated that he could not come to that conclusion because of technical deficiencies in the film and because the film did not show fibrosis on the lungs.
Dr. Ziskind explained that the pleural changes he saw on the X-ray taken by him in 1973 indicated asbestos related disease which was not disabling. Asked about his report to plaintiff’s previous attorney that this X-ray showed “coarse linear infiltrates” on plaintiff’s lungs he admitted that this could have been caused by inhalation of asbestos dust for eight years, but again insisted that this was a short time for such to develop. He also admitted that the reports of the pulmonary function tests, made in February, 1975, when compared with his own tests made 22 months previously, indicated that plaintiff’s vital capacity and lung function had been reduced over this period of time. Asked whether going back to work in an asbestos-dusty environment for the 22 month period had any effect on plaintiff’s lung condition, he said it would have the effect of hastening the aging process of natural deterioration of the body and would be an aggravating factor for any pulmonary disease. But in the final analysis, Dr. Ziskind maintained that plaintiff’s present disability was caused by heart disease.
Defendants had plaintiff examined by Dr. Thomas Oelsner, an internist, in January, 1977, and he concluded that plaintiff had angina pectoris, coronary artery disease and hypertension, which disabled him, but he did not believe that plaintiff’s condition was caused by exposure to asbestos. He admitted that an X-ray of plaintiff showed a pulmonary abnormality consisting of blunting of the left costo-phrenic angle, but he did not think this was disabling. He found plaintiff had rales in his chest, and he admitted that this was an abnormal finding. He said that the symptoms of asbestosis were shortness of breath, chronic cough and pleuritic pain, and while plaintiff had the first two of the symptoms he did not have the type of chest pains which he would classify as pleuritic.
Plaintiff’s testimony was to the effect that he went to the doctor in 1973 because he had been told that the X-ray disclosed a spot on his lungs. Following tests made then he was told to go back to work, and he had no discomfort while working. He performed all of the duties of his employment for 22 months until 1975 when he was getting short winded and could not work more than 10 or 15 minutes at a time without stopping. When the X-rays disclosed in 1975 that he had a spot on his lung and he was again seen by Dr. Bloom he was told thereafter that he could not return to work.
Defendants produced some of the company witnesses who testified that plaintiff was laid off in August, 1975, by National Gypsum, not because of poor health but because of a general reduction in forces.
The issues raised by defendants on this appeal are 1) the exceptions of prescription and res judicata and 2) their defense on the merits to the effect that plaintiff’s disability was not caused by the occupational disease of pneumoconiosis or asbestosis.
On the question of the exception of res judicata, there is no evidence in the record to show that plaintiff was disabled *744 from pneumoconiosis, asbestosis or any other occupational disease in 1973. On the contrary, after being off for the six weeks he returned to his same duties with defendant for 22 months. In Chivoletto v. Johns-Manville Products Corp., 330 So.2d 295 (La.1976), plaintiff filed a suit claiming to be disabled as a result of asbestosis. The trial court had found that plaintiff had asbestosis and reasoned that although he was not disabled he was entitled to an award under the Workmen’s Compensation Act and found that the usefulness of a physical function, namely, his lungs was seriously impaired and made an award under Sec. 1221(4)(p) of the act. Plaintiff took an appeal from this judgment, seeking an award for total and permanent disability, and upon the judgment of the trial court being affirmed applied for writs to the Supreme Court. The Court said the following:
“In view of the findings of the trial judge, which were undoubtedly based to some extent upon the credibility of the witnesses, especially plaintiff’s subjective complaints, and the complete acceptance of those findings by the Court of Appeal, together with our own study of the record, we are unable to conclude that plaintiff is totally and permanently disabled as he contends. However, in view of the progressive nature of asbestosis, plaintiff is reserved the right to file another compensation claim if and when he becomes disabled as a result of the occupational disease he has contracted. LaCoste v. J. Ray McDermott & Co., 250 La. 43, 193 So.2d 779 (1967).”
In the LaCoste case cited by the Court above the plaintiff sought benefits for disability resulting from another occupational disease, silicosis. The defense was that he did not have silicosis, or if he did he was not disabled by the disease. The trial court held it was immaterial whether he had silicosis or not because he was not disabled as á result thereof. After the Court of Appeal reversed, in effect, saying that the contraction of the disease alone entitles the employee to compensation under Sec. 1031.1, the Supreme Court reversed the Court of Appeal and held that disability was an essential element for a recovery along with contraction of the occupational disease. One of the arguments made by plaintiff was that unless he was awarded compensation for permanent disability he might lose his right thereafter to claim compensation when his working ability became impaired as a result of the disease because of the provision of then Paragraph D (now E) of Sec. 1031.1, which provides that unless the employee files a claim within four months of the date of his contraction of the disease, or within four months of the date that the disease first manifested itself, his claim would be barred. The Court held that the manifestation of the disease spoken of in the statute would be equivalent to the plaintiff’s becoming disabled as a result of the disease and the four months would begin to run at that time. The Court then concluded:
“We therefore conclude that plaintiff’s suit should not have been dismissed with prejudice, as the district court decreed, but only as of non-suit, reserving to plaintiff the right to file another compensation claim if and when he became disabled as a result of the occupational disease he has contracted.”
In the instant case, the evidence shows that plaintiff was not disabled although he may have had asbestosis in 1973 when he made a settlement for the six weeks of absence from work. Under the two cases cited it is clear that plaintiff’s right to claim total disability as he did in the instant case was reserved when that settlement was made and his present suit is not barred by the exception of res judicata. Likewise, there is no basis for the exception of prescription.
The other issue raised by defendants is that plaintiff’s disability did not result from asbestosis but resulted from his cardiac condition or his arteriosclerosis. We have reviewed the evidence and testimony at some length, and while there is evidence to support defendants’ position in this respect, all the evidence preponderates in fa *745 vor of plaintiff’s contention that asbestosis is the cause of his disability. The principal witness relied upon by defendants was Dr. Ziskind who consistently maintained that plaintiff has not contracted asbestosis or pneumoconiosis in the first instance, and if he did the disease was not sufficiently developed to produce plaintiff’s disability. His thinking was dominated by the theory that contraction of asbestosis to the point where it would be disabling would take practically 20 years of exposure to asbestos dust. His refusal to recognize plaintiff’s disability due to asbestosis was predicated on the proposition that he could not have reached that point after only eight years of employment even though he had in 1973 informed plaintiff’s prior counsel that the X-ray taken at that time showed coarse linear infiltrates and despite plaintiff’s continuing to work with asbestos for 22 more months.
In considering whether or not plaintiff had asbestosis considerable weight must be given to the fact that defendant’s national physician, Dr. Wright, thought in 1973 that the X-rays were positive to the extent that plaintiff was advised to see his own physician, and in 1975 he clearly interpreted the film to show pneumoconiosis due to asbestos. This conclusion by defendants’ own physician constitutes somewhat of an admission against their own interest in this respect.
Plaintiff’s principal physician, Dr. Bloom, while not a pulmonary disease expert as was Dr. Ziskind, nevertheless was properly qualified as an expert in the general practice of medicine and he did have knowledge of asbestosis from his own experience in the practice. His testimony was clear and unequivocal that plaintiff had asbestosis and that this was one of the causes of his disability. Plaintiff’s asbestosis cannot be isolated from his cardiac condition because both Dr. Bloom and Dr. Ziskind testified that the asbestosis would be an aggravating factor for the heart condition. But the root cause of his disability is asbestosis with the result that he is entitled to recover workmen’s compensation benefits under Section 1031.1 even though his heart condition and arteriosclerosis contributed to his overall disability.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.
REDMANN and BEER, JJ., dissent with written reasons.

. This attorney is not the same attorney who is now representing plaintiff in these proceedings.