WILLIAMS, Judge.
Plaintiff brought this suit in workers’ compensation alleging he had contracted an occupational lung disease while in defendant’s employ. The trial court awarded 100 weeks compensation at the minimum rate for loss of a physical function, La.R.S. 23:1221(4)(p). Both plaintiff and defendant appeal.
Plaintiff assigns error in the trial court’s failure to award benefits for total and permanent or permanent and partial disability, and in failing to include medical expenses and interest in its judgment. Defendant alleges the trial court erred in awarding plaintiff any compensation at all.
At trial, Willie Scott was 56 years old. He had smoked heavily since he was 15 years of age and had habitually drunk a half-pint of whiskey a day. He suffered from a multitude of medical problems: gastrointestinal difficulties, hiatal hernia, liver problems, chronic pancreatitis, colonic diverticulosis, a benign renal cyst in the kidney, glucose intolerance, arthritis, back pain, high blood pressure, angina pectoris, and bronchitis. Evidence as to whether plaintiff could add asbestosis or other pulmonary occupational diseases to this list, however, was conflicting.
Plaintiff’s condition was analyzed by five physicians. Plaintiff consulted Dr. Pettit, who referred plaintiff to Dr. Rosenberg, a specialist. Plaintiff’s attorneys referred plaintiff to Dr. Brown and Dr. Brach. Defendant’s attorneys referred plaintiff to Dr. Weill.
All of the physicians agreed that the latency period between exposure and appearance of symptoms in asbestosis was, at a minimum, eight to twenty years, and that the more intermittent the exposure, the longer the latency period. Plaintiff was only employed with the defendant from 1974 until 1979. Plaintiff admitted that Ryan-Walsh had phased out its asbestos operations while he was employed there, and that the quantity of asbestos they re *1261 ceived dwindled and finally ceased long before he left the company. Plaintiff testified to having handled much more asbestos in his previous position with Maloney Car Loading from 1958 to 1970 than he had with defendant.
All of the physicians agreed that pulmonary fibrosis can be traced to a myriad of causes. Dr. Brach stated that 158 different causes had been established; Dr. Brown agreed that there were over 100. Plaintiff’s lung scarring was obstructive. All of the physicians agreed this was consistent with plaintiffs bronchitis or • his heavy smoking, and that asbestosis, conversely, was considered to cause restrictive lung scarring.
With the exception of Dr. Brown, all of the physicians felt that asbestosis could not be diagnosed by x-ray (unless possibly there was calcification of the diaphragm, which was not evidenced in plaintiff’s x-rays). Dr. Pettit and Dr. Rosenberg felt that there was no evidence of pulmonary fibrosis. Dr. Brach felt the x-rays showed mild pulmonary fibrosis, but said it was quite natural that the other doctors read the x-rays as normal due to the mildness of the condition. Only Dr. Brown insisted the x-rays clearly showed asbestosis and that any doctor who read them otherwise was, in his opinion, wrong.
Plaintiff underwent a series of pulmonary function tests at East Jefferson Hospital. Dr. Pettit, Dr. Rosenberg, and Dr. Brach all believed they were normal for a man of the plaintiff’s age and smoking history. Dr. Brach said that plaintiff’s exercise tests were mildly abnormal. Dr. Brach said the mild abnormalities would be compatible with other diagnoses besides asbestos fibrogenic dust exposure, but that he felt they were due to asbestosis because plaintiff’s history did not relate another possible cause to him. Dr. Brach did agree that the exercise test results could be caused by cardiovascular or other problems besides pulmonary disease. Dr. Weill conducted pulmonary function studies at Tulane Medical School and found them all normal. Because his test results were normal, Dr. Weill concluded that any disturbance in exercise tolerance or any exertional shortness of breath would be caused by something other than lung disease.
Not one physician could state that plaintiff had developed asbestosis caused by his exposure to fibrogenic dust at Ryan-Walsh. Dr. Pettit, Dr. Rosenberg, and Dr. Weill felt that plaintiff did not have asbestosis. Dr. Brach traced the “mild changes” in plaintiff’s lungs to asbestos exposure only in default of other explanations in plaintiff’s history. Only Dr. Brown testified with certainty that plaintiff had contracted asbestosis, and even he could only conclude that plaintiff’s exposure at Ryan-Walsh “certainly would have an effect, but it would be an additive to the previous.” The only point all the doctors could agree on was that plaintiff’s exposure to dust at Ryan-Walsh did aggravate plaintiffs condition and that he should work in a non-dusty atmosphere.
The trial judge’s reasons read:
“The Court is of the opinion that the plaintiff suffered injury or, at least, the aggravation of a pre-existing condition due to dust inhalation. Although plaintiff’s breathing problems are largely attributable to cigarette smoking, as indicated by the nature of the plaintiff’s disease, the Court finds a relationship between the plaintiff’s respiratory problems and his exposure to dust inhalation during the course and scope of his employment.”
The court granted plaintiff the minimum compensation rate set out in R.S. 23:1221(4)(p), providing for 100 weeks payment in cases not considered permanent or temporary partial or total disability, “where the usefulness of a physical function is seriously permanently impaired...”
The trial judge evidently felt that whatever disability plaintiff suffered was caused by the sum of his many medical problems and that plaintiff’s asbestos exposure alone had not disabled him, because he did not grant plaintiff either partial or total disability. Rather, the judge found that the “relationship” between plaintiff’s *1262 asbestos exposure and his lung condition merited the bottom award under Provision (p) affording him the shortest period of payment possible.
The application of this provision was legally correct. The court found that asbestos exposure had not disabled plaintiff, but had seriously permanently impaired his respiratory function. Provision (p) has been previously used to compensate victims of impaired lung function. See Chivoletto v. Johns-Manville P. Corp., 319 So.2d 492 (La.App. 4th Cir.), aff'd. 330 So.2d 295 (La.1976); Landry v. Nat’l. Gypsum Co., 354 So.2d 739 (La.App. 4th Cir.1978) (Beer, J., dissent from refusal to grant rehearing); Crump v. Hartford Ace. & Indem. Co., 367 So.2d 300 (La.1979), (Supreme Court reversed and reinstated trial court judgment not because (p) provision was inapplicable to nondisabled asbestosis victim, but because plaintiff was in fact disabled). The 1983 amendment of the provision, narrowing the scope of compensation for loss or impairment of physical function to a restricted category, but specifically including “respiratory system,” only strengthens the argument for applicability of the broader pre-1983 physical function clause to lung diseases.
The question in this case lies in whether there exists sufficient causation to justify any award at all for a physical condition largely based on a host of unrelated ailments and asbestos exposure occurring primarily before the years the plaintiff was in the defendant’s employ. The plaintiff is already receiving benefits through non-workers’ compensation channels. He took an early retirement with the company and received $330.00 a month in pension. The company’s insurer pays 80% of the plaintiff’s medical expenses. The plaintiff bore the burden of proving a workers’ compensation claim by a preponderance of the evidence. Juneau v. Tulane Industrial Laundry, 358 So.2d 347 (La.App. 4th Cir.1978). The trial court’s resolution of the conflicting evidence as to whether asbestosis was present should be respected, however. Billiot v. Bourg, 338 So.2d 1148 (La.1976); White v. Johns-Manville Sales Corp., 416 So.2d 327 (La.App. 4th Cir.1982). We cannot find that the trial judge’s resolution of the facts was manifestly erroneous and would, therefore, affirm the trial court’s judgment.
Defendant conceded that if the award were confirmed, interest would be owed on each past due installment until paid. Accordingly, we affirm the trial court’s award, interest on amounts past due to run from due date until paid.
AFFIRMED.
BARRY, J., dissents with reasons.